529 F.2d 570
 Richard SOHAPPY et al., Appellees,
v.
McKee A. SMITH et al., Appellants.
UNITED STATES of America, Appellee,
v.
STATE OF OREGON et al., Appellants.
Richard SOHAPPY et al., Appellees,
v.
STATE OF WASHINGTON, Appellant.
UNITED STATES of America, Appellee,
v.
STATE OF WASHINGTON, Appellant.
Richard SOHAPPY et al., Plaintiffs-Appellees,
v.
McKee A. SMITH et al., Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
STATE OF OREGON et al., Defendants-Appellants.
 Nos. 75--2409, 74--2376 and 74--2617.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 28, 1976.
 
 James B. Hovis (argued), Yakima, Wash., Owen M. Panner (argued), Panner, Johnson, Marceau & Karnopp, Bend, Or., for appellees.
 Lee Johnson, Atty. Gen. (argued), State of Or., Portland, Or., James M. Johnson, Asst. Atty. Gen. (argued), State of Wash., Olympia, Wash., Carl Strass, Atty. (argued), Land and Natural Resources Section, U.S. Dept. of Justice, Washington, D.C., for appellants.
 Tony Schwab (argued), Seattle, Wash., for intervenor Columbia River Fishermen.
 OPINION
 Before HUFSTEDLER and WRIGHT, Circuit Judges, and LINDBERG,* District Judge.
 PER CURIAM:
 
 
 1
 On July 8, 1969, the district court filed its opinion and decree defining the treaty rights of the Confederated Tribes and Bands of the Yakima Indian Nation, the Confederated Tribes of the Umatilla Reservation (the Walla Walla, Cayuse, and Umatilla Tribes), the Nez Perce Indian Tribe of Idaho, and the Confederated Tribes of the Warm Springs Indian Reservation. It construed the treaty right 'of taking fish at all usual and accustomed places' on the Columbia River and its tributaries, and declared the manner and extent to which the State of Oregon could regulate Indian fishing. (Sohappy v. Smith (D.Or.1969) 302 F.Supp. 899.) The district court retained jurisdiction to grant further or amended relief and permitted '(a)ny party at any time (to) apply to the court for a subsequent modification of any provision of this decree where the continued application of the decree has become inequitable or impracticable, but this right shall not affect the finality of the decree with respect to times prior to any such modification.' No one appealed.
 
 
 2
 All concerned parties accommodated themselves to the decree, albeit restively, until April 1974, when a dispute arose over Indian fishing rights in the 1974 spring run of Chinook Salmon. The spring run was not large enough to satisfy all the demands upon it and to conserve the resource. On April 17, 1974, the Washington Department of Fisheries moved to intervene and sought an injunction prohibiting any treaty fishing until the States of Oregon and Washington promulgated regulations permitting Indian fishing. The State of Washington was then substituted for the Department of Fisheries. Upon receiving the consent of Washington to be bound by the 1969 decision and judgment and conditioned thereon, the district court permitted intervention. Oregon and Washington had previously held a hearing which resulted in the decision to close the Columbia River to Indian commercial fishing for the 1974 spring Chinook run while allowing Indian subsistence and ceremonial fishing (a trivial quantity of fish) and sports fishing under general state law. The States then sought a preliminary injunction to restrain the Indians from commercially fishing the river. On April 29, 1974, the district court denied the motion because the States' decision had not been made in conformity with the standards set out in the court's 1969 opinion. The next day the States held another hearing and again found that the closure of the river to Indian commercial fishing was necessary. Based on this finding, the district court issued a temporary restraining order against the Indians on April 30, 1974. After several hearings, the court dissolved the temporary restraining order on May 8, 1974, because in conducting the States' hearings to promulgate regulations for the 1974 Chinook run, the States did not comply with the requirement of the prior decree that state regulations must be the least restrictive upon Indian treaty rights as can be imposed consistent with assuring the necessary escapement of fish for conservation purposes. The district court found that the States had not considered means less restrictive upon the protected Indian treaty rights than limiting Indian commercial fishing nor had they accorded to the Indians the rights to proper notice and to hearing secured to them by the decree.
 
 
 3
 If that is all that had happened, this controversy would have evaporated at the end of the 1974 run, but the district court, on May 10, 1974, also entered an order amending the 1969 judgment as follows:
 
 
 4
 'The Indian treaty fishermen are entitled to have the opportunity to take up to 50 percent of the harvest of the spring Chinook Salmon run destined to reach the tribes' usual and accustomed grounds and stations. Except insofar as amended here, the 1969 judgment remains in full force and effect.'
 
 
 5
 The States attack the amendment on several grounds, and the United States and the Indians defend the apportionment. Before we discuss these contentions, we dispose of some preliminary points.
 
 
 6
 Washington has attempted to appeal from the order dissolving the temporary restraining order. This portion of the appeal must be dismissed because the order is not appealable under 28 U.S.C. § 1292(a)(1). (St. Helen v. Wyman (9th Cir. 1955), 222 F.2d 890, 9 J. Moore, Federal Practice P110.20(5), at 253--54 (2d ed. 1975).) Washington did not seek an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).
 
 
 7
 We dismiss Washington's appeal from the district court's order denying her motion for a preliminary injunction. This order is appealable under 28 U.S.C. § 1292(a)(1), but the appeal is moot. The 1974 run is over. The States' closure orders have also expired by their own terms.
 
 
 8
 We also dismiss Washington's attempted appeal from the original 1969 judgment. The judgment is alive for purposes of appeal only in respect of the amending order that the district court issued pursuant to its reservation of jurisdiction. The judgment was otherwise final for appeal purposes years ago, and no one can now appeal from it. Moreover, Washington is estopped from attacking the 1969 decree or its underpinnings because she consented to be bound by the judgment and the opinion as a price for permission to intervene.
 
 
 9
 The 1969 decree established that these Indians are entitled under their treaty rights to their opportunity for a fair share of the Columbia River fishery, within the broad guidelines set by the court. The same decree permitted the States to regulate fishing 'to the extent that (they) can establish that such regulations are reasonable and necessary for conservation of the fish resources and do not discriminate against the Indians.' Thus, the decree did not permit the States to regulate Indian treaty fishing unless the States fulfilled their burden in respect to any such regulation by establishing that the particular regulation was (1) reasonable, and (2) necessary to conserve fish resources, and (3) did not discriminate against these Indians.
 
 
 10
 The States vigorously argue that the 50 percent allocation provision in the 1974 amending order was a substantial departure from the 1969 decree, that they had no adequate notice that any such allocation was in issue, and that the provision cannot be justified or substantiated by the record before the district court in the 1974 proceedings.
 
 
 11
 We do not think that the 1974 order was a departure from the 1969 decree. That decree established the Indians' right to a fair share of the salmon harvest, if any harvest there was to be. The 1974 order did no more than define 'fair share' in the context of the spring Chinook Salmon run, after the States had failed to promulgate any regulations that complied with the 1969 decree. Although the order was prompted by the controversy over the 1974 spring run, the district court obviously intended the order to apply to future spring Chinook Salmon runs. If its intention were otherwise, the court would have expressly restricted the amending order. Nothing on the face of the order or in the skimpy record suggests that the allocation is either inequitable or impracticable. (Cf. United States v. Washington (9th Cir. 1975) 520 F.2d 676.) We note, in passing, the merit in the States' contention that they should have an opportunity to make a record concerning the propriety of the district court's apportionment of spring Chinook Salmon runs yet to occur. Evidence directed to that issue, which the States could muster and present, would no doubt prove useful to the district court. The states, not the Indians, have the burden of establishing the respects, if any, in which the proposed allocation of future spring Chinook Salmon runs is inequitable or impracticable and of offering alternative allocation proposals which will as well or better protect the Indians' treaty rights as defined by the 1969 decree and conserve this fish resource.
 
 
 12
 Many of the participants and issues in this litigation were also present in United States v. Washington, supra, 520 F.2d 676. There the district court decreed a 50--50 division of fishing opportunity. It is not surprising that a similar division was adopted by the court below as to the 1974 spring Chinook Salmon run. In United States v. Washington, supra, at 687, we said:
 
 
 13
 The district court has a great amount of discretion as a court of equity in so devising the details of an apportionment as to best protect the interests of all parties, as well as those of the public.
 
 And later we stated:
 
 14
 The district court was not required to decree a perfect 50--50 division of fishing opportunity. (Id. at 688.)On remand, the district court will have the benefit of United States v. Washington, supra, to aid in its future determinations. There is no reason to conclude, however, that the apportionment there approved represents the only resolution of this difficult controversy.
 
 
 15
 We decline the States' invitation to examine a number of other issues that were not presented to the district court. Accordingly, no other question raised by the United States, the Indians or the States requires discussion.
 
 
 16
 We affirm the district court's order denying the non-Indian commercial fishermen's post-judgment motion for leave to intervene as a matter of right. (Columbia River Fishermen's Protective Union and some named individual fishermen.) We agree with the district court that the attempted intervention was untimely; these fishermen have not succeeded in showing any extraordinary or unusual circumstances that would justify their late intrusion into this suit.
 
 
 17
 The cause is remanded to the district court for further proceedings consistent with the views herein expressed.
 
 
 
 *
 Honorable William J. Lindberg, Western District of Washington, sitting by designation