**UNITED STATES of America,**
**Plaintiff-Appellee,**

**and**

**The Confederated Tribes and Bands of the Yakima Indian Nation; the Confederated Tribes of the Warm Springs Reservation of Oregon; Confederated Tribes of the Umatilla Indian Reservation; and Nez Perce Tribe of Idaho, Intervenors-Appellees,**

v.

**STATE OF OREGON, Defendant,**

**State of Washington,**
**Defendant-Appellant,**

**State of Idaho, Intervenor.**

No. 83–4254.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1985.

Decided Aug. 29, 1985.

Maria A. Iizuka, Dirk D. Snel, Dept. of Justice, Washington, D.C., for the U.S.A.

Howard Arnett, Johnson, Marceau, Karnopp & Petersen, Bend, Or., Tim Weaver, Hovis, Cockrill, Weaver & Bjur, Yakima, Wash., for intervenors Indian Tribes.

Stephen V. Goddard, Deputy Atty. Gen., Boise, Idaho, for State of Idaho.

James M. Johnson, Sr. Asst. Atty. Gen., Kenneth O. Eikenberry, Atty. Gen., Olympia, Wash., for State of Wash.

Before BROWNING and ALARCON, Circuit Judges, and WILKINS,[*] District Judge.

ALARCON, Circuit Judge:

This appeal arises out of continuing litigation, begun in 1968, over the rights of various Indian Tribes to the anadromous fishery of the Columbia River and its tributaries. In the current dispute, the States of Washington and Idaho appeal from an expired preliminary injunction issued in 1983 at the request of the Tribes under the district court's retained jurisdiction in the case. The injunction prevented the States of Oregon and Washington from enforcing certain fishing regulations against the Tribes during the fall 1983 fish runs; it also adopted the Tribes' 1983 proposed fishing seasons.

Originally, the parties to this appeal included the Tribes, the United States, the State of Washington, and the State of Oregon. Oregon, however, abandoned its issues on appeal, and the State of Idaho intervened as of right. *See United States v. Oregon*, 745 F.2d 550 (9th Cir.1984).

Although the parties raise several issues on appeal, we consider only those issues which are necessary to resolve this dispute and which the parties properly raised below. The primary issues concern the district court's finding that the fishery regulations promulgated by the Columbia River Compact violated the Indians' treaty fishing rights, and that court's jurisdiction to set aside those regulations and adopt the Tribes' proposed seasons by means of an injunction. We affirm.

FACTUAL BACKGROUND

In 1968, the United States and individual members of the Confederated Tribes and Bands of the Yakima Indian Nation filed separate actions against the State of Oregon to define the Indians' treaty right to take fish "at all usual and accustomed places" on the Columbia River. Four Indian Tribes intervened, and the district court consolidated the actions. In 1969, the court entered judgment, defining the extent to which Oregon can regulate Indian fishing, and enjoining Oregon from enforcing certain fishing regulations against the Tribes. *Sohappy v. Smith*, 302 F.Supp. 899 (D.Or.1969); *see also United States v. Oregon*, 657 F.2d 1009, 1011 (9th Cir.1981). The district court expressly retained continuing jurisdiction to review future fishery regulations and to modify or enforce its decree. *Sohappy*, 302 F.Supp. at 911; *Sohappy v. Smith*, 529 F.2d 570, 571–72 (9th Cir.1976) (per curiam).

In 1974, after agreeing to be bound by the 1969 decree, the State of Washington intervened as of right. Over the years, the parties invoked the district court's jurisdiction several times; in turn, the district court encouraged the parties to adopt a comprehensive plan concerning fishery on the Columbia.

The parties finally signed an agreement, the Columbia River Management Plan (the Plan), which the district court formally approved on February 28, 1977. The Plan set conservation goals for each fish species, established certain fishing regulations, and provided for the establishment of future management techniques. The Plan did not establish fishing locations, times, or defi-

---

[*] Honorable Phillip C. Wilkins, Senior United States District Judge for the Eastern District of California, sitting by designation.

nite quotas. The states regulate these details through the Columbia River Compact (the Compact), an interstate agency which controls commercial fishery on the river. *United States v. Oregon*, 718 F.2d 299, 302 (9th Cir.1983).

The Plan contained several provisions of particular relevance to this action. First, the Plan set escapement goals for each species of fish, and permitted the Tribes to reduce their deficit harvest quotas in succeeding years. Second, the Plan prohibited the Tribes from establishing commercial fisheries for steelhead trout. Third, it restricted to a minimum of eight inches the mesh size of nets used to harvest fish. This provision permitted smaller fish, including steelhead, to escape. Fourth, the Plan specified that:

> In the event that significant management problems arise from this agreement that cannot be resolved by mutual agreement, the parties agree to submit the issues to federal court for determination. In any event, the Court shall retain jurisdiction over the case....

Finally, the Plan provided that:

> Upon thirty days written notice by any party, after five years from date, this comprehensive plan may be withdrawn or may be renegotiated to assure that the terms set forth represent current facts, court decisions, and laws.

In early 1982, two Tribes gave notice of their intent to withdraw from the Plan. However, later that year the court apparently directed the parties to continue following the Plan.

On August 3, 1983, the Tribes notified the Plan's management committee that they were considering submitting a proposal to the Compact that would eliminate the eight-inch mesh restriction and permit them to establish commercial steelhead fisheries.

On August 12, 1983, the Compact met to establish fishery regulations for the fall 1983 fish runs. At that meeting, the Tribes formally proposed that the Compact remove the eight-inch mesh restriction and permit them to harvest steelhead commercially. They also proposed seasons for the fall runs.

The Compact rejected the Tribes' proposal and adopted seasons shorter in duration and more restrictive geographically than those proposed by the Tribes. The Compact contended that its seasons conformed to applicable legal standards and the Plan, and that its seasons were necessary for the conservation of the fish, particularly the upriver "bright" salmon.

On August 16, the Tribes orally notified the States of Oregon and Washington that the Tribes would seek an order preventing the States from enforcing the Compact regulations. On August 19, the Tribes served the States with the motion for a preliminary injunction and their supporting memorandum and affidavits.[1]

On August 24, 1983, the district court held a hearing on the preliminary injunction. The district court denied the State of Idaho's motion to intervene as of right, and found that the Compact's fall 1983 regulations violated the Indians' treaty rights. Specifically, the court found that the Compact regulations regarding upriver brights were not the least restrictive regulations necessary for conservation of the fish and that the States had impermissibly subordinated the Tribes' treaty rights to goals other than conservation.

The district court also found that the Compact's geographical restrictions were unnecessary to preserve the fish, and that the eight-inch mesh requirement unnecessarily restricted the Tribes' right to harvest available steelhead trout, coho salmon, and fall chinook jack salmon. The court noted that changed circumstances and a threat of irreparable injury to the Tribes justified its modification of the Plan. Under its retained jurisdiction, the court therefore enjoined the States from enforcing the 1983 Compact regulations, adopted the Tribes'

---

1. Washington and Oregon were already aware of much of the information contained in these papers because the Tribes had used similar information to support their proposals before the Compact.

proposals, and ordered the parties to negotiate a new management plan.[2]

The States of Washington and Idaho now appeal.

### ISSUES ON APPEAL

Washington and Idaho contend that the district court exceeded its authority in issuing the injunction. Specifically, they argue that the Compact has exclusive authority to establish fishery regulations for the Columbia River; that the Compact's 1983 regulations complied with all relevant legal standards, including the 1977 Plan; and that therefore the district court lacked the power to enjoin the States from enforcing the Compact regulations or to adopt regulations not proposed by the Compact. The States further contend that the district court should have required the Tribes to bring any action for modification under Fed.R.Civ.P. 60(b) rather than as a motion for preliminary injunction, and that the district court failed to provide them with proper notice and an adequate hearing on the motion. In connection with these arguments, the parties dispute whether the 1977 Plan remains in effect after two Tribes noticed their intent to withdraw. The Tribes argue that the appeal is moot.

### I

### MOOTNESS

■ As a preliminary matter, we decline the Tribes' invitation to reconsider their contention that this appeal is moot. Although the 1983 fishing season has expired, a motions panel of this court found that the appeal presents questions which are "capable of repetition, yet evading review." *Weinstein v. Bradford,* 423 U.S.

2. The district court amended the injunction on September 13, 1983, but the parties do not appeal the amendment.

3. Although the parties have negotiated a new one-year plan, it does not apply to all species of fish in the Columbia. Thus, the dispute over allocation of steelhead in particular may recur.

4. However, we note in passing that the label attached to a motion does not control its sub-

147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per curiam). We see no reason to disturb that ruling. The appeal presents not only questions concerning the allocation of fish, but questions concerning the district court's ability to review and modify fishery regulations that allegedly violate the Indians' treaty rights. These issues are likely to recur.[3] *See United States v. Oregon,* 718 F.2d 299, 302–03 (9th Cir.1983) (because the district court must issue its orders "as close as possible to the start of the fishing season," the dispute over the fishing allocation ˙ can easily recur, yet evade review); *United States v. Oregon,* 657 F.2d 1009, 1012 n. 7 (9th Cir.1981) (appeal of injunction not moot after fishing season expired where immunity and jurisdictional issues will likely occur again). We therefore turn to the parties' other contentions.

### II

### RULE 60(b)

■ At the outset, we can readily dispose of the States' contention that the Tribes could properly bring this action only as a Rule 60(b) motion for relief from a final judgment. The States failed to raise this issue before the district court, and they offer no explanation for their silence. The rule is well-established that absent exceptional circumstances, an issue not raised below will not be considered on appeal. *Rainbow Pioneer No. 44–18–04A v. Hawaii-Nevada Investment Corp.,* 711 F.2d 902, 905 (9th Cir.1983); *Gard v. United States,* 594 F.2d 1230, 1235 (9th Cir.) (per curiam), *cert. denied,* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979). No such exceptional circumstances exist here, and we therefore decline to address this claim.[4]

stance. *United States v. 1982 Sanger 24' Spectra Boat,* 738 F.2d 1043, 1046 (9th Cir.1984). Thus, assuming that the purpose and effect of the Tribes' motion for an injunction was to modify the 1969 judgment or the 1977 Plan, and assuming without deciding that those judgments constitute final orders, we could construe the Tribes' motion as a request for relief under Rule 60(b). *Cf. United States v. Dieter,* 429 U.S. 6, 8–9, 97 S.Ct. 18, 19–20, 50 L.Ed.2d 8 (1976) (per

## III

## DUE PROCESS ARGUMENTS

We also decline to reach the States' contention that the district court denied them due process by failing to provide proper notice of the Tribes' motion or an adequate hearing. The district court's failure to hear the testimony of the States' expert witness on steelhead forms the basis of their claim that they were denied a fair hearing. They base their claim of lack of notice on the Tribes' failure to comply with the five-day notice requirement of Fed.R. Civ.P. 6(d). The States failed, however, to raise these issues before the district court.

The transcript reveals that the States made some reference during the hearing to the Compact's lack of time to consider the Tribes' proposal before its August 12 meeting. However, the States did not request a continuance, nor did they clearly argue to the district court, at the hearing or in their papers, that they lacked time to defend against the injunction or to consider the proposal prior to the court hearing. The States also failed to object to the district court's failure to hear the testimony of their expert witness on steelhead.

We are particularly reluctant to consider "a claim of error not raised below if the error might have been avoided had the issue been timely raised." *Rainbow Pioneer No. 44–18–04A v. Hawaii-Nevada Investment Corp.*, 711 F.2d 902, 905 (9th Cir.1983). Had the States raised their claim of lack of notice to the district court, the court could have avoided any possibility of error by granting them a continuance. Furthermore, the States might also have avoided any dispute as to the adequacy of the hearing by objecting in a timely manner to the alleged exclusion of their steelhead witness.[5] We therefore refuse to address the merits of these issues on appeal.

*Malhiot v. Southern California Retail Clerks Union*, 735 F.2d 1133, 1137 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985); *Westinghouse Electric Corp. v. Weigel*, 426 F.2d 1356, 1357 (9th Cir.1970) (per curiam).

## IV

## STATUS OF THE PLAN

■ Nor must we resolve the merits of the parties' contentions regarding the continuing validity of the Plan. The district court clearly had power under its retained jurisdiction in both the 1969 decree and the 1977 Plan to modify its previous decisions if changed circumstances warranted it. *United States v. Oregon*, 718 F.2d 299, 303 n. 4 (9th Cir.1983); *United States v. Oregon*, 657 F.2d 1009, 1015, 1016 (9th Cir. 1981); *Sohappy*, 302 F.Supp. 899, 911 (D.Or.1969). Furthermore, the court has the power in any event to protect the Tribes' fishing treaty rights from State regulations that do not comply with relevant legal standards. *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (en banc) (per curiam) ("If the State acts for the primary purpose or object of affecting or regulating the fish supply or catch in noncompliance with the treaty as interpreted by past decisions, it will be subject to immediate correction and remedial action by the courts."); *see also United States v. Washington*, 520 F.2d 676, 687 (9th Cir.1975) (district court has great amount of discretion as court of equity to devise details of an apportionment to protect interests of all parties), *cert. denied,* 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976). Thus, we can uphold the court's exercise of discretion whether the Plan remains in effect or has terminated.

We now turn to the merits of the court's order.

---

curiam) (the Court construed a "Motion to Set Aside [the] Order of Dismissal" as a petition for rehearing where the purpose and effect of the motion was to request the court to reconsider a previously decided question in order to effect an alteration of the parties' previously adjudicated rights).

**5.** It is unclear from the transcript whether the district court in fact refused to hear the testimony of the steelhead witness or whether the witness was not present at the hearing to give testimony.

## V

### STANDARD OF REVIEW

We review the grant of a preliminary injunction for abuse of discretion. *Wilson v. Watt,* 703 F.2d 395, 398 (9th Cir.1983); *Miss Universe, Inc. v. Flesher,* 605 F.2d 1130, 1132–33 (9th Cir. 1979). We will reverse if we conclude that the district court based its decision on an error of law or on clearly erroneous findings of fact. *Wilson v. Watt,* 703 F.2d at 398; *see also Sports Form, Inc. v. United Press International, Inc.,* 686 F.2d 750, 752–53 (9th Cir.1982); *United States v. Oregon,* 657 F.2d 1009, 1012 (9th Cir.1981). We also apply the abuse of discretion standard to our review of the modification of a consent decree, *Washington v. Penwell,* 700 F.2d 570, 575 (9th Cir.1983); *Safe Flight Instrument Corp. v. United Control Corp.,* 576 F.2d 1340, 1343 (9th Cir.1978) (per curiam), and the modification of an injunction, *see System Federation No. 91, Railway Employes' Department v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961).

## VI

### THE COURT'S ORDER

A district court has the power to issue a preliminary injunction if the moving party shows either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor. *Apple Computer, Inc. v. Formula International Inc.,* 725 F.2d 521, 523 (9th Cir.1984); *Sports Form,* 686 F.2d at 753. Furthermore, the court retains the power to modify the terms of its injunction in the event that changed circumstances require it. *System Federation v. Wright,* 364 U.S. at 647, 81 S.Ct. at 371; *Anderson v. Central Point School District No. 6,* 746 F.2d 505, 507 (9th Cir.1984) (per curiam). This power to modify in light of changed circumstances extends to the modification of consent decrees. *United States v. Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76

L.Ed. 999 (1932); *Safe Flight Instrument Corp.,* 576 F.2d at 1343.

Here, the States argue that the district court impermissibly enjoined them from enforcing regulations promulgated by the Compact in conformity with all relevant legal standards and the 1977 Plan. This argument does not withstand analysis. Contrary to the States' assertions, the regulations did not comply with the appropriate legal standards. Thus, the regulations violated the Indians' treaty rights, and the district court did not abuse its discretion in enjoining their enforcement.

In construing the Indians' treaty rights or enjoining regulations affecting those rights, the district court must consider proper legal standards, including those set forth in previous decisions. *See Puyallup Tribe v. Department of Game of Washington,* 391 U.S. 392, 398, 88 S.Ct. 1725, 1728, 20 L.Ed.2d 689 (1968); *United States v. Oregon,* 529 F.2d at 572–73; *Sohappy,* 302 F.Supp. at 906–08, 911. Any regulation of the Tribes' treaty fishing rights must meet three standards. First, the state must show that the regulation is both reasonable and necessary for the conservation of the fish; the regulation must be the "least restrictive which can be imposed consistent with assuring the necessary escapement of fish for conservation purposes." *Sohappy,* 302 F.Supp. at 907–08. Second, the States must consider the protection of the treaty right to take fish at the Indians' usual and accustomed places as an objective co-equal with the conservation of the fish runs for other uses. *Id.* at 911. And third, the regulations must accord the Tribes an opportunity to take, by reasonable means, a fair and equitable share of all fish from any given run. *Id.* at 907–08.

Here, the district court construed the Compact's 1983 regulations under the *Sohappy* standards and found them lacking. In particular, the court noted that the States' regulations regarding upriver brights were not the least restrictive necessary to conserve the run. The record does

not contradict this finding. Although the optimum escapement goal for brights was 40,000 fish, the record shows that neither parties' proposal would have achieved that goal in 1983. The States' regulations provided for an estimated escapement of 31,-300 brights, whereas the Tribes' proposal envisioned an escapement of 29,700. The States admitted that the measurement of escaping fish is an inexact science and that they had underestimated several runs of fish in the past. Given the difference of only 1,600 fish, we cannot say that the district court clearly erred in finding that the States' regulations were not the least restrictive necessary for the conservation of the brights.

Nor do we believe that the district court erred in finding that the States' regulations as to time, place, and equipment impermissibly limited the Tribes' ability to catch significant numbers of harvestable coho salmon, fall chinook jack salmon, and steelhead. In reaching its decision, the court had before it the affidavits and testimony of several expert witnesses, including affidavits concerning steelhead. The evidence showed that the runs of certain species of fish had declined, but that the steelhead runs in general had improved, and that surplus coho and jack salmon would escape under the States' regulations. The Tribes' evidence indicated that eliminating the mesh restriction, extending the fishing season by a number of days, and permitting the Tribes greater access to their usual fishing places would permit them to harvest these surplus fish and would reduce the deficit of fish owed to them from prior years, without endangering conservation. Reviewing the record as a whole, we are not left with the "definite and firm conviction" that the district court committed a mistake by finding the States' regulations unnecessarily interfered with the Tribes' right to take a fair share of each run. *See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* — U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46

(1984) (*quoting Pullman-Standard v. Swint,* 456 U.S. 273, 284–85 n. 14, 102 S.Ct. 1781, 1787–88 n. 14, 72 L.Ed.2d 66 (1982)).[6]

Furthermore, we do not believe that the district court improperly usurped the Compact's power to establish fishery regulations when it adopted the Tribes' proposal. Although the Compact has authority to regulate fishery on the Columbia, it must do so in conformity with proper legal standards. *See Puyallup Tribe v. Department of Game of Washington,* 391 U.S. 392, 398, 88 S.Ct. 1725, 1728, 20 L.Ed.2d 689 (1968); *Sohappy,* 302 F.Supp. at 906–08. The determination as to whether Compact regulations violate the appropriate standards is left to the courts. *See United States v. Oregon,* 718 F.2d at 303 (the question of what showing of necessity justifies a limitation on treaty rights is subject to de novo review); *Sohappy,* 302 F.Supp. at 911 (judicial review of state action is appropriate). In the event that the court finds a violation, it may not only enjoin the enforcement of the offending regulations, but it may also establish guidelines that conform to the treaty. *See United States v. Oregon,* 718 F.2d at 302, 305 (this court affirmed the district court's order enjoining regulations violating the treaty and adopting conforming seasons proposed by the Tribes). This is precisely what the district court did here. The court found a violation, and issued the injunction to protect and define the Tribes' rights under the treaty. In so doing, it did not abuse its discretion.

### VII

### NEGOTIATION OF A NEW PLAN

The parties do not appeal from the portion of the district court's decision ordering them to negotiate a new plan concerning fishery on the Columbia River. We emphasize the importance of the parties' immediate compliance with this aspect of the injunction in order to avoid needless litigation over future fishing seasons and regulations. The parties should therefore make

---

**6.** Indeed, the court noted that in the 1983 Compact meeting, the States had failed to consider conservation needs in connection with the mesh restriction, and had attempted to achieve goals unrelated to the conservation of the fish.

every effort to reach agreement immediately as to the terms of a new plan for allocation and management of all species of anadromous fish on the Columbia River.

## CONCLUSION

The district court properly evaluated the Compact's 1983 regulations under the legal standards established in *Puyallup v. Department of Game of Washington*, 391 U.S. 397, 398, 88 S.Ct. 1725, 1728, 20 L.Ed.2d 689 (1968) and *Sohappy v. Smith*, 302 F.Supp. 899 (D.Or.1969). Moreover, in finding that the Compacts' 1983 regulations were not the least restrictive possible consistent with conservation of the fish, the court did not make any clearly erroneous factual findings. Thus, the court did not abuse its discretion in enjoining the States from enforcing the 1983 regulations.

Furthermore, the court properly exercised its power to interpret and protect the Tribes' treaty rights in light of changed circumstances. Thus, the court also did not abuse its discretion by adopting the proposal offered by the Tribes. That proposal was consistent with conservation without detracting from the Tribes' right to take fish from all usual and accustomed places.

AFFIRMED.