41 F.3d 553
 Dale BARBER, Guardian Ad Litem for Candace Crytzer, Blaize
Barber, Chandra Barber, and Alissa Alexander,
Minors, Plaintiffs-Appellants,
v.
CINCINNATI BENGALS, INC., a Foreign Corporation; Lewis
Billups; James Brooks; Carl Carter, et al.,
Defendants-Appellees.
 No. 93-35854.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 4, 1994.
Decided Dec. 5, 1994.
 
 Victoria L. Vreeland (argued), Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Seattle, WA, Richard C. Eymann (on the briefs), Feltman, Gebhardt, Eymann & Jones, Spokane, WA, for plaintiffs-appellants.
 Robert G. Stachler (argued), Taft, Stettinius & Hollister, Cincinnati, OH, Craig P. Campbell (on the briefs), Karr, Tuttle, Campbell, Seattle, WA, Spencer Hall, Jr. (on the briefs), Mundt, MacGregor, Happel, Falconer, Zulauf & Hall, Seattle, WA, for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before: ALARCON, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 Opinion by Judge ALARCON; Dissent by Judge KLEINFELD.
 
 ALARCON, Circuit Judge
 
 2
 Dale Barber appeals from the dismissal of the action he filed on behalf of Victoria Crytzer's minor children for loss of parental consortium. The action was brought against the Cincinnati Bengals, Inc., and certain members of that football team (the Bengals). Crytzer filed an action against the Bengals on April 10, 1992 for damages for personal injuries and for recision of a release of her claims. The claim for loss of parental consortium arises from the injuries allegedly suffered by Crytzer.
 
 
 3
 On April 9, 1993, a jury returned a verdict in favor of the Bengals on Crytzer's recision claim. Although judgment was entered on Crytzer's recision claim pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, no judgment disposing of her personal injury claims has been entered. While Crytzer's appeal of the judgment on the recision claim was pending before this court, the district court dismissed her minor children's claims for loss of parental consortium. The district court ruled that Barber had failed to show that joinder with Crytzer's action was not feasible as required by Washington law. The court also determined that Crytzer's release extended to her minor children and extinguished their loss of parental consortium claim.
 
 
 4
 Barber contends that the district court erred in dismissing the minor children's loss of parental consortium action for failure to join because the allegations of the complaint demonstrate that it was not feasible to do so. Barber also contends that Crytzer's release of all claims, executed prior to the filing of the minor children's action, does not bar their independent action for loss of parental consortium under Washington law.
 
 
 5
 We vacate the district court's order and remand with instructions that the court consider whether, in view of the fact that no separate judgment dismissing Crytzer's personal injury claims has been entered, joinder or consolidation of this action with Crytzer's pending causes of action is warranted. We also hold that the district court erred in concluding that, under Washington law, Crytzer's release extended to and extinguished her minor children's loss of parental consortium claim.
 
 I.
 
 6
 Barber commenced this action on May 10, 1993, in Washington state court on behalf of Crytzer's children for loss of parental consortium. The Bengals removed the action based on diversity jurisdiction. Thereafter, the Bengals filed a motion for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Barber's action had not been joined with Crytzer's action as required by Washington law. The Bengals also asserted that the release of all claims executed by Crytzer extends to her minor children and therefore extinguished any derivative claims that the children had against the Bengals.
 
 
 7
 In this action, Barber alleges, inter alia, that, as a result of the Bengals' tortious acts against Crytzer, her children have suffered a loss of parental consortium. The complaint also alleges that this matter could not have been joined with Crytzer's personal injury claims until the permanency and severity of her injuries were known.
 
 
 8
 In his opposition to the Bengals' motion to dismiss, Barber asserted that joinder was not feasible, and that Crytzer could not release the claims of her children for loss of parental consortium. In granting the Bengals' motion, the district court held that Barber's action should have been joined with Crytzer's action and that the release barred the children's claims. The district court also noted that the court in Crytzer's action "issued an order recognizing that plaintiff's pursuit of other claims was precluded and directing entry of judgment pursuant to Rule 54(b)." The district court further ruled that the language of the release upheld in Crytzer's action "bars all claims, which includes the plaintiff's claims ('heirs, executors, administrators, and assigns' are listed in the Release)."
 
 
 9
 We have read the Rule 54(b) order and judgment filed in Crytzer's action. The order directing entry of judgment pursuant to Rule 54(b) in Crytzer's action reads as follows:
 
 
 10
 As this matter was bifurcated so that the claims relating to the validity of the contract were tried first, and there remain other claims by Plaintiff, as well as counterclaims by Defendants; and as the jury has returned a verdict holding the contract valid and precluding Plaintiff's pursuit of other claims; and as the Court made the following rulings at the close of trial: Granted Defendants' Motion for Dismissal, pursuant to Rule 50(a), of Plaintiff's claims based on (1) ambiguity, (2) inadequate consideration, (3) violation of public policy, and (4) illegality; there is no just reason for delay and the Clerk of the Court is hereby directed to enter judgment upon the verdict pursuant to Fed.R.Civ.P. 54(b).
 
 
 11
 (emphasis added).
 
 
 12
 The Bengals' April 6, 1993 Rule 50(a) motion for judgment as a matter of law was directed solely at the insufficiency of Crytzer's remaining legal theories in support of her recision claim. The Bengals did not request dismissal of the personal injury claims in this motion. The court's direction to the clerk to enter judgment referred to the jury's verdict on the factual issues regarding the validity of the release.
 
 
 13
 On the same date that the recision claim was dismissed, the clerk entered the court's judgment. It reads as follows: "It is ORDERED AND ADJUDGED by jury verdict that the contract between plaintiff and defendants is valid." In reviewing the record and the docket entries, we found no reference to a dismissal of Crytzer's personal injury claims. Moreover, no separate judgment disposing of Crytzer's personal injury claims has been entered as required by Rule 58 of the Federal Rules of Civil Procedure. Rule 58 provides in pertinent part that "[e]very judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)." Fed.R.Civ.Pro. 58. Thus, until the court directs the clerk to enter judgment on the personal injury claims, they remain unresolved in the Crytzer matter.
 
 
 14
 In dismissing the loss of parental consortium claims in this matter, the district court was apparently misled into the conclusion that a final judgment dismissing Crytzer's personal injury claims had been entered. The Bengals argued before the district court that Barber's "offer to join the earlier lawsuit after final judgment and appeal is contrary to both state and federal law." (emphasis added). The Bengals relied on Sohappy v. Smith, 529 F.2d 570, 574 (9th Cir.1976). In Sohappy, we affirmed the district court's order denying a post-judgment motion for leave to intervene as a matter of right. Id. at 574. We held that the motion to intervene was untimely. We concluded in Sohappy that appellants had "not succeeded in showing any extraordinary or unusual circumstances that would justify their late intrusion into this suit." Id. Sohappy is not controlling because, contrary to the Bengals' representation, no final judgment has been entered dismissing Crytzer's personal injury claims.
 
 II.
 
 15
 Barber contends that the district court erred in granting the Bengals' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A dismissal for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed de novo. Oscar v. University Students Co-Op. Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). Jurisdiction in this matter is based on diversity and Washington substantive law governs. West v. State Farm Fire and Casualty Co., 868 F.2d 348, 350 (9th Cir.1989) (citation omitted). A district court's interpretation of state law is also reviewed de novo. Id. (citation omitted).
 
 
 16
 Washington recognizes an independent cause of action for loss of parental consortium. Ueland v. Reynolds Metals Co., 103 Wash.2d 131, 691 P.2d 190, 195 (1984). In Ueland, the Supreme Court of Washington held that "a child has an independent cause of action for the loss of the love, care, companionship and guidance of a parent tortiously injured by a third party." Id. The court also stated that the "separate [loss of] consortium claim must be joined with the parent's underlying claim unless the child can show why joinder was not feasible." Id. (emphasis added). The Supreme Court of Washington did not define the term "feasible" in Ueland.
 
 
 17
 The Bengals ask us to apply the definition of the word "feasible" set forth in Huggins v. Sea Ins. Co. Ltd., 710 F.Supp. 243 (E.D.Wis.1989). In Huggins, the district court concluded that a child must join in his or her parent's action unless the claimant can "establish that it was impossible, impractical or not in the child's best interest for his or her claim to be joined with those of the injured party." Id. at 250-51 (citations omitted).
 
 
 18
 Huggins is factually distinguishable from the instant matter. In Huggins, the claim for loss of parental consortium was filed after judgment on the merits had been entered in the parent's underlying tort action. Id. at 245. For that reason, the claim for loss of parental consortium could not be joined because a final judgment on the merits of the parent's action had been entered. The record in Crytzer's action shows that her personal injury claims are still pending in the district court. The district court's conclusion that joinder was no longer feasible was based on its erroneous assumption that a final judgment dismissing Crytzer's personal injury claims had been entered.
 
 III.
 
 19
 Barber also contends that the district court erred in ruling that the release signed by Crytzer abolished her children's rights and remedies against the Bengals. Barber asserts that Scott v. Pacific West Mountain Resort, 119 Wash.2d 484, 834 P.2d 6 (1992), expressly prohibits a child's rights from being abolished where a parent executes a release purporting to terminate a child's cause of action.
 
 
 20
 The district court concluded that the children's action for loss of parental consortium is barred because their mother released all claims against the Bengals. The district court stated that "Ms. Crytzer's valid release of claims against defendants served to prohibit or abolish the underlying tort. Thus, plaintiff's claims are not cognizable." The district court relied on Conradt v. Four Star Promotions, 45 Wash.App. 847, 728 P.2d 617 (1986), in support of its ruling. In Conradt, the court held that "[n]o claim for loss of consortium will arise if no tort is committed against the impaired spouse." Id. 728 P.2d at 621.
 
 
 21
 In Conradt, a husband and wife brought personal injury and loss of consortium claims against the operators of a racetrack for injuries the husband sustained in an automobile demolition race. Id. at 619. Prior to the race, Mr. Conradt signed a document entitled "Voluntary Waiver and Release from Liability and Indemnity Agreement," in which he assumed the risk of injury, and released the promoters and others from liability to himself, his personal representatives, his heirs and his next of kin. Id. at 620 (internal quotations omitted).
 
 
 22
 The court held that Mr. Conradt could not allege a cause of action against the operators of the race track because he assumed the risk of injury by signing the release. Id. The court also concluded that the release precluded Mrs. Conradt's loss of spousal consortium claim. Id. at 621-22. The court reasoned as follows:
 
 
 23
 No claim for loss of consortium will arise if no tort is committed against the impaired spouse. Here, the injured husband, by signing the release, entered into a contract expressly agreeing to participate in an undertaking posing a known risk. He assumed the risk and evidenced that assumption by signing the release. The husband thus previously abandoned the right to complain if an accident occurred. There can be no actionable negligence where no duty was owed to the person injured. Even though loss of consortium has been held a separate, independent, nonderivative action of the deprived spouse and not affected by the negligence of the impaired spouse, nevertheless, an element of this cause of action is the tort committed against the impaired spouse. Moreover, a consortium claim by a lone spouse will not be recognized where the underlying tort has been prohibited or abolished.
 
 
 24
 Here, because of the release, no cause of action arose from which a court could conclude a tort had been committed upon Mr. Conradt. Therefore, an element of the consortium claim was lacking and summary judgment dismissal was proper.
 
 
 25
 Id. at 621-22 (internal quotations and citations omitted).
 
 
 26
 In the present case, unlike the circumstances in Conradt, Crytzer executed the release after the allegedly tortious conduct occurred. Barber argues that Conradt is not controlling in light of Scott v. Pacific West Mountain Resort, 119 Wash.2d 484, 834 P.2d 6 (1992). We agree. In Scott, the Supreme Court of Washington stated:Under Washington law parents may not settle or release a child's claim without prior court approval. Further, in any settlement of a minor's claim, Washington law provides that a guardian ad litem must be appointed (unless independent counsel represents the child) and a hearing held to approve the settlement.
 
 
 27
 Since a parent generally may not release a child's cause of action after injury, it makes little, if any, sense to conclude a parent has the authority to release a child's cause of action prior to an injury.
 
 
 28
 . . . . .
 
 
 29
 We hold that to the extent a parent's release of a third party's liability for negligence purports to bar a child's own cause of action, it violates public policy and is unenforceable.
 
 
 30
 Id. 834 P.2d at 11-12 (footnotes omitted). The district court erred in dismissing the loss of parental consortium claims based on the terms of Crytzer's release.
 
 
 31
 We vacate the order of dismissal and remand the matter with instructions that the district court determine whether joinder or consolidation of this matter with Crytzer's personal injury claims is feasible since that matter is still pending. In so holding, we express no view as to whether joinder is still feasible under these circumstances.
 
 
 32
 VACATED AND REMANDED.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 33
 I respectfully dissent. I would affirm the dismissal of the children's consortium claims.
 
 I.
 
 34
 Nobody directly harmed the children. The alleged direct harm was to their mother. Victoria C. alleged in her complaint that she was repeatedly raped by members of the Cincinnati Bengals football team. She testified that her sexual contact with the first player was in accord with her wishes, but that the contact with the other players was against her will.
 
 
 35
 The defendants denied the truth of Victoria C.'s claims. The defendants claimed that the sex which occurred was entirely in accord with Victoria C.'s requests.
 
 
 36
 One of these accounts must be false. We do not know which one. Neither side is entitled to have us presume the truth of its account of the sex, in the procedural context in which this case arises.
 
 
 37
 In October of 1991, one year after the night at the hotel, Victoria C. called the Bengals' team office and initiated discussions about the incident. She had recently met with a rape crisis counselor regarding the incident. She had also hired an attorney. She told the team officials that unless they reached some agreement, she would "go public." However, she did not tell her attorney about the contacts she was making, because she did not want to involve her attorney in the negotiations. After about ten days of back and forth telephone calls, she and the team agreed that they would pay her $30,000, and she would sign a release. She signed the release on behalf of "myself, my heirs, executors, administrators, and assigns" of "all claims, present and future, known or unknown, in any manner arising out of the alleged contact." The release covered "all damages whether or not contemplated at the present time and includes results undeveloped and unknown at the present time, as well as those now known." She promised that the terms of the release "will not be publicly disclosed by her," and agreed to pay back the $30,000 if she broke that promise.
 
 
 38
 Victoria C. sued the team and numerous individuals in April of 1992, six months after signing the release and taking the money. She sued for various torts, and to set aside her release. The claims were assault and battery, negligent infliction of mental distress, racial discrimination and sexual harassment and abuse, outrage, false imprisonment, aiding and abetting the sexual assault and battery, and rescission. All but the rescission claim were for alleged wrongs to Victoria C. the night at the hotel. The rescission claim sought to have the release set aside. The defendants counterclaimed.
 
 
 39
 The district court held a jury trial on the rescission claim. If Victoria C. had effectively released her claims for all the wrongs allegedly done to her at the hotel, then the claims arising out of those wrongs could never be tried. If she had not, then they would be tried. The jury was instructed that the release was not a valid contract if any one of numerous conditions existed at the time. Among the possible grounds upon which the jury was instructed it should treat the release as invalid were mental incapacity, innocent or fraudulent misrepresentations upon which she relied, duress, undue influence, and overreaching. The jury rejected all of them. The jury decided that "The contract between plaintiff and defendants was valid." The judgment declaring the release valid was entered April 15, 1993. We have affirmed that judgment. Victoria C. v. Cincinnati Bengals, No. 93-35595. It is final.
 
 
 40
 A few weeks after the judgment was entered in Victoria C.'s case, Barber, the grandfather of two of her children petitioned for appointment as guardian ad litem, and sued the same defendants. Victoria C.'s attorneys represented him as well as her. The complaint alleged the same facts at the hotel. Having lost the case for the mother, the attorneys for the guardian ad litem claimed that the children had, because of the harms to the mother, suffered loss of consortium due to impairment of the parent-child relationship. They also sought punitive damages. Judge Dimmick dismissed this complaint because it should have been joined with the mother's complaint and also because it was barred by the release. I think Judge Dimmick was correct on both of these alternative and independent grounds for her dismissal of the claim.
 
 II.
 
 41
 Now that a jury trial has established that Victoria C. validly released all her claims arising out of the alleged events at the hotel, there will never be a trial to determine whether the sex was consensual or not. "[A] release is a surrender of the cause of action." William L. Prosser & W. Page Keeton, The Law of Torts Sec. 49, at 332 (5th ed. 1984). Victoria C., after October 5, 1991, when she released her claims, no longer had any cause of action for anything the Bengals may have done to her the night at the hotel a year before. Because her appeal of the judgment on that jury verdict has failed, she will never have any such claim.
 
 
 42
 It is only recently that courts have recognized the tort of a child's loss of parental consortium. The Restatement Second states that there is no such claim. Restatement (Second) of Torts Sec. 707A (1977). Liability in Washington State for the tort was first recognized only ten years ago in Ueland v. Reynolds Metals Co., 103 Wash.2d 131, 691 P.2d 190 (1984). Because of its novelty, the courts are just now working out the limits of the tort.
 
 
 43
 In Ueland, the Washington Supreme Court expressed its concern about the possibility of multiple actions. The remedy it adopted was a general requirement that the children's claims be joined with the parents' claims:
 
 
 44
 We too are concerned with the possibility of multiple actions, but find the Iowa court's answer to the problem sensible. We too hold that the children's claims for loss of parental consortium must be joined with the injured parents' claim whenever feasible. A child may not bring a separate consortium claim unless he or she can show why joinder with the parent's underlying claim was not feasible.
 
 
 45
 Id., 691 P.2d at 194.
 
 
 46
 The threat of multiple actions has certainly materialized in this case. After Victoria C.'s lawyers lost her case in a jury trial, they just filed suit again, this time on behalf of the children. The suit is for the same alleged group rape of the mother. If it occurred as she says, it was a terrible crime and outrage. The compensatory damages are likely to push the limits of what the jury feels it can award in good conscience, and the punitive damages would likely be much greater than the compensatory damages, if the jury believes Victoria C.'s account of the facts. The Bengals claim that her account is false. They went to trial against her attack on the release, and persuaded the jury that the release was not tainted in any way. Yet now they face defending a claim based on the same alleged group rape, and they face the same punitive damages for the alleged rape, for which Victoria C. sued them and lost.
 
 
 47
 The purpose of the joinder requirement is to save defendants from the burden of having to defend themselves over and over again on the same claim. It is not merely a technical requirement to save court clerks the inconvenience of maintaining multiple files. We are defeating the purpose of the rule requiring joinder if feasible by our reversal.
 
 
 48
 Barber's attorneys opposed the motion to dismiss in district court on the ground that the children's claims could not be joined, because the children were not fully aware of the extent of the mother's condition, until her primary expert witness for trial had completed her pre-trial preparation in March of 1993. They did not offer any affidavits or other evidence for their alleged unawareness. Answering the obvious question, why the children did not join the claims in March, before trial, when they claim to have first learned of the full extent of their damages, instead of waiting until after they had lost at trial, Barber's attorneys said joinder was not feasible because "Ms. C.'s claims were proceeding toward trial." That does not show infeasibility.
 
 
 49
 Judge Dimmick was understandably unimpressed with this argument. She did not, as the majority opinion says, err "based on its erroneous assumption that a final judgment dismissing Crytzer's personal injury claims had been entered." The judge said nothing about any such assumption. She said that the children's claim that joinder was not feasible until 1993 when they learned the full extent of the harm "does not square with Washington law or with the record in the earlier trial." She referred particularly to one child's testimony at trial that he recognized in 1991 his mother's inability to provide the quality of care she had provided before the incident. That showed he knew there was loss of consortium long before the mother's suit was even filed. Judge Dimmick explained that under Washington law, the victim of the tort did not have to know the full extent of the harm for time to begin running against him. The majority disposition finds no fault with this analysis.
 
 
 50
 The majority opinion does not attempt to justify the failure to join the children's claims for loss of consortium to the mother's claims. It relies entirely upon the proposition that something remains to be adjudicated below. That is true, but what remains to be adjudicated does not relieve the guardian ad litem from the obligation to have pursued the claims before they were settled and before the mother's case went to trial and the judgment on the release was entered against her. The district court order, which the majority quotes, says "the jury has returned a verdict ... precluding Plaintiff's pursuit of other claims." That means that the district court has nothing left to do with Victoria C.'s remaining claims, the tort claims arising out of the night at the hotel, except to dismiss them. There was no excuse for failing to join the children's claims with the mother's between April 1992, when the mother's lawsuit was filed, and April 1993, when the mother's lawsuit went to trial.
 
 III.
 
 51
 The district court's alternative and independent reason for dismissing the claim involved the release. Because of the novelty of the tort claim for loss of consortium based on injuries to a parent, authority is sparse on the issue of whether the parent's settlement of her own claim for her injury bars the child's claim for loss of consortium. In my view, the district court was correct on this ground as well as the other. Washington courts has not spoken on this exact issue. To the extent that Washington decisions intimate any likely result, it is that the release will preclude the claim.
 
 
 52
 The intermediate appellate court in Washington held that a husband's release of his injury claim barred his wife's claim for loss of consortium. Conradt v. Four Star Promotions, Inc., 45 Wash.App. 847, 728 P.2d 617 (1986). The majority distinguishes this case, because the husband assumed the risk of his injury before the automobile race, rather than releasing his claim after it had accrued. That is true, but it does not establish the converse, that had the release come after the accident, the loss of consortium claim would not have been extinguished.
 
 
 53
 The Washington Supreme Court held in Reichelt v. Johns-Manville Corp., 107 Wash.2d 761, 733 P.2d 530 (1987), that even though the husband's tort claim for asbestos injury was barred by limitations, the wife's claim for loss of consortium was not necessarily barred. It reasoned that the wife's loss of consortium claim accrued when she suffered her injury, not when the husband suffered his, and such claims "need not be joined with the injured spouse's claim." Id., 733 P.2d at 538. There was no evidence to establish when the wife began losing her husband's consortium in Reichelt. Id. There are two reasons why Reichelt has no bearing on the case at bar. First, it rejects for spousal loss of consortium the rule requiring joinder if feasible, which the Washington Supreme Court has adopted for child's loss of consortium. Second, in the case at bar, as the district judge pointed out, one of the children testified in his mother's trial that the alleged damage occurred in 1991, before the mother filed her suit.
 
 
 54
 In Scott v. Pacific West Mountain Resort, 119 Wash.2d 484, 834 P.2d 6 (1992), the Washington Supreme Court held that a child could sue a ski school for injuries from a skiing accident, even though his mother had signed an application for the ski school purporting to release it from liability if her child got hurt. Id., 834 P.2d at 10-12. The reason was that the mother lacked authority to waive the child's own future cause of action. Id. The holding has little bearing on the problem before us. A direct injury to a child is a different thing from loss of consortium. Even though the damages in a consortium claim are theoretically to the child, not the parent, nevertheless the direct physical injury is to the parent. It is one thing to say that a parent cannot give away a child's claim for injury to himself, and quite another to say that a child's claim for damages to himself resulting from injury to the parent are not barred by the parent's release of her claim for her own injuries. Scott would be more relevant if the parent was hurt on the ski hill, released her own claim for her physical injuries, and then the child sued for loss of consortium. But those are not the facts of Scott. The future injuries aspect of Scott resembles Conradt, in which the consortium claim is barred by the effective release of the direct claim.
 
 
 55
 The purpose of the joinder requirement is avoidance of multiple claims or multiple damages for the same wrong. We undermine that purpose by allowing the children to recover, despite the mother's release, for compensatory damages based on the mother's emotional condition. The mother's complaint alleged "loss of free and happy association with her family" and "inability to care for her children." That is the alleged harm upon which the children's claim is based. It is hard to see how anyone could sort out, if they were not deciding both things at the same time, how much of the Bengals' money to give the mother for this, and how much to give to the children.
 
 
 56
 The punitive damages claim asserted on behalf of the children shows even more plainly why release of the injury claim requires that the consortium claim be barred, to avoid multiple claims or recoveries for the same wrong. The punitive damages claim will be measured by the egregiousness of the alleged conduct of the defendants, and their wealth, not by the damages to the children. The mother negotiated for money, and signed a release. The Bengals had to be aware when they agreed to pay the money of the risk of a massive punitive damages award if they went to trial and lost. The $30,000 must have included the amount they feared in such an award, discounted by their estimate of the probability that the jury would believe their account, not Victoria C.'s, of what happened at the hotel. Yet we now invite the children to sue the Bengals for exactly the same money measured in the same way as the punitive damages for which the mother sold a release. We allow this even though the lawyer representing the guardian ad litem and the mother lay in the weeds with the children's claim until losing the mother's claim.
 
 
 57
 The Washington Supreme Court would, I am confident, decide that the requirement that the children's claims be joined if feasible, requires joinder in the personal injury action of the parent before those claims are settled or defeated by judgment. The district court correctly dismissed this suit. I would affirm.