[No. 34855.   Department Two.   May 14, 1959.]

MAYFLOWER AIR-CONDITIONERS, INC., *Respondent*, v. WEST
COAST HEATING SUPPLY, INC., *Appellant*.[1]

[1]Reported in 339 P. (2d) 89.

Riddell, Riddell & Williams and Jacobs, Jones & Brown, for appellant.

Wettrick, Flood, O'Brien, Toulouse & Lirhus (George J. Toulouse, Jr., and Ralph C. Hove, of counsel), for respondent.

HILL, J.—This appeal is from a judgment of dismissal of a cross-complaint for damages for breach, by the manufacturer, of an exclusive distributorship contract, and for damages for a refusal to ship articles ordered by the distributor, and for the termination of its distributorship.

The judgment was on the theory that the pleadings showed the alleged contract to have been terminable at will.

The cross-complainant, the West Coast Heating Supply, Inc., hereinafter called the distributor, had been the exclusive distributor in Washington and Oregon since April, 1948, for the products of the cross-defendant, Mayflower Air-Conditioners, Inc., hereinafter called the manufacturer.

It had already been determined, on a motion for summary judgment, that the manufacturer was entitled to a judgment on its complaint against the distributor for goods, wares, and merchandise sold and delivered; at the same time a motion for a summary judgment, dismissing the cross-complaint, had been denied.

The issue between the parties is as to whether the distributor has a counterclaim for damages against the manufacturer for a wrongful termination of the exclusive distributorship contract and for a termination of the distributorship, which damages the distributor seeks to set off against the judgment in favor of the manufacturer for goods, wares, and merchandise.

The manufacturer seeks to support this judgment on the basis of matter included in the distributor's bill of particulars, which includes all the writings upon which the claimed exclusive distributorship contract is based. The manufacturer's contention is that the contract, as shown therein, is

without mutuality because the distributor was not obligated thereby to purchase or to sell any of the manufacturer's products, and that the contract is, therefore, not binding on either party. It is further contended that even if the writings did constitute a contract, such a contract is terminable at will, since no time limit as to its duration was provided.

In the leading case of *Sargent v. Drew-English, Inc.* (1942), 12 Wn. (2d) 320, 121 P. (2d) 373, and again in *Mall Tool Co. v. Far West Equipment Co.* (1954), 45 Wn. (2d) 158, 273 P. (2d) 652, we disposed of the contention, which the manufacturer makes here, *i.e.*, that there was no contract between the parties since the agreement lacked mutuality.

▪██ Here, as in the *Sargent* case, there is a confusion of mutuality and consideration. We have indicated that where, as in the *Sargent* and *Mall Tool Co.* cases and in the present case, the parties have operated under an exclusive distributorship agreement, the distributor can prove consideration in various ways, particularly by evidence of promotional work done pursuant to the agreement; and a conceded lack of mutuality does not establish a failure of consideration.

The lack of mutuality does, as pointed out in the *Mall Tool Co.* case, leave the distributor at the mercy of the manufacturer so far as new terms and conditions are concerned, because the manufacturer or producer can terminate the contract at any time on reasonable notice, or on the notice specified in the contract. See also: *Swalley v. Addressograph Multigraph Corp.*, 158 F. (2d) 51, (7th Cir. 1946); *Flint v. Youngstown Sheet & Tube Co.*, 143 F. (2d) 923, (2d Cir. 1944).

The trial court here erred in assuming that, under the pleadings, the distributor could not prove a consideration for the contract it had alleged; and in determining, as a matter of law, that the manufacturer had the right to terminate the agreement at any time and for any reason.

The manufacturer asserts that even if the distributor could prove consideration, and even if a reasonable

notice had to be given, the pleadings and the files establish that the agreement had been terminated by proper notice; and that, therefore, the distributor could recover no damages, and the dismissal of the cross-complaint was proper.

The showing in the pleadings, relative to the termination of the contract, is an allegation in the distributor's cross-complaint that the manufacturer—in violation of its exclusive distributorship agreement—did grant an exclusive distributorship in Washington and Oregon to Thermal Supply Company, Inc., on or before April 12, 1957; and has since, on or about that date, refused to ship products ordered by the distributor, and has indicated that it will not in the future honor such orders.

The manufacturer, by way of reply and answer to the cross-complaint, denied that there was a violation of an exclusive distributorship agreement with the distributor for the reason that there never was such an agreement, "and denies the granting of an exclusive franchise to Thermal Supply Co., Inc., on or before April 12th, 1957."

The pleadings, patently, allege a violation of the exclusive distributorship agreement. The manufacturer's position, in its pleading, is that there was no exclusive distributorship agreement or franchise.

It should be noted that the distributor gave notice of a trial amendment to its cross-complaint, alleging that on or before April 9, 1957, the manufacturer appointed "Hardesty, Favero & Company, Inc., its exclusive agent for the states of Oregon and Washington," and granted to Thermal Supply Company, Inc., an exclusive franchise to distribute its products in the state of Washington, and granted to United Products Company an exclusive franchise to distribute its products in the state of Oregon; that the manufacturer had refused to honor orders from the distributor since on or about that date, and had indicated that it would not honor any future orders.

The manufacturer moved to strike the notice of trial amendment, which motion was not passed upon as the trial court granted a motion to dismiss on the pleadings, stating in its order that it had "considered the pleadings, records

and files in this cause," and had determined, as a matter of law, that the manufacturer had the right to terminate the agreement at any time and for any reason.

Therein, as we have heretofore indicated, the trial court erred; the manufacturer's right to terminate for any reason is not questioned; but its right to terminate at any time is limited by the giving of a reasonable notice, or by the giving of the notice provided by the agreement.

We pass, without comment, the question of the trial court's right to consider "the records and files" in passing on a motion for judgment on the pleadings, which record and files included not only a bill of particulars, but the affidavits filed in connection with an earlier motion for summary judgment; and we assume, without deciding, that the trial court on a motion for judgment on the pleadings can consider a bill of particulars filed by either party.

■ We cannot, however, pass without comment the manufacturer's contention that the motion on which the trial court passed was a motion for summary judgment. It not only was not denominated a motion for summary judgment, but there was no attempt to comply with the summary judgment rule (Rule of Pleading, Practice and Procedure 19 (1)), which requires that the notice thereof be served ten days before hearing. The rule is intended to prevent a summary judgment being too summary.

Considering the manufacturer's motion for what it was, a motion for judgment on the pleadings; and assuming that such a motion brought the correspondence between the parties, as set forth in the bill of particulars, before the court, it appears:

A. That by a letter of April 23, 1948, the manufacturer confirms an oral agreement that the distributor shall have the distribution of the manufacturer's warm-air-heating equipment in "the following states in their entirety: Washington, Oregon and Idaho." The manufacturer agrees that it will not sell, or offer for sale, its equipment "to any customer or outlet" other than the distributor "without prior notification to and consultation with you." (The territory

was thereafter changed by mutual agreement by eliminating the state of Idaho.)

B. The distributor stated by letter, dated April 26, 1948, that the agreement, as stated in the letter of April 23, 1948, conformed to their oral agreement.

C. The manufacturer relies on a letter by it to the distributor, bearing date of April 2, 1957, as its notice of termination. We quote it in full:

"This letter concerns your Mayflower franchise for the states of Washington and Oregon.

"During the year 1957 to date there have, as you know, been several long distance telephone conversations between our two companies during which we discussed the probable effects on this franchise, first, of your acquisition last year of a furnace manufacturing company which produces warm air heating equipment in competition with Mayflower; and secondly, your proposed removal of your stock of Mayflower furnaces from Seattle to Portland, and your closing out of your Seattle operation.

"The point under discussion involved the possibility of our making the Mayflower line available to an additional distributor in the area in order to protect its competitive status and give the proper service to Mayflower dealers in your territory.

"The Mayflower franchise under which you have been operating was granted to you in April, 1948, and under its terms our company is obligated not to sell or offer for sale any Mayflower heating equipment in your territory without prior notification to and consultation with you. The long distance telephone conversations referred to above which have taken place between us over the past months served to comply with this provision of our agreement. This letter will serve further to notify you that it is our intention to discuss this situation with several Distributors in the area to determine whether or not any of them would be interested in handling the Mayflower line.

"The above described events do not preclude the possibility of our continuing unaltered the franchise relationship which has existed between us, and the consequent abandonment of any efforts to obtain an additional distributor, providing all of the problems which now exist in the situation can be worked out to the satisfaction of both our companies."

The manufacturer's counsel, after quoting this letter in full in its brief, states in italics: *"A more clear notice of termination could not be given."*

■ We disagree. It states that the manufacturer intends to discuss the situation with other distributors. It states there is the possibility of the manufacturer's line being made "available to an additional distributor in the area in order to protect its competitive status and give the proper service to Mayflower dealers in your territory." It concludes with the declaration that nothing said therein precludes the possibility of the relationship, which has existed since April, 1948, "continuing unaltered." There is not even a suggestion that the distributorship itself is to be discontinued; only the possibility of an additional distributor.

It is to be noted that the distributor alleges damages caused by the termination of the distributorship, as well as by the termination of the exclusive distributorship. It alleges the failure to fill its orders, and of the announced intention of the manufacturer to honor no further orders.

There seem to us to be several issues to be determined: Was there a reasonable notice of termination of the exclusive distributorship agreement? If there was not, what damages has the distributor sustained in consequence of the wrongful termination?

In view of the fact that there was clearly no notice of termination of the distributorship (as distinguished from the exclusive distributorship), until the manufacturer refused to honor the distributor's orders, what damage has the distributor sustained?

The judgment of dismissal on the pleadings is reversed, and the case is directed to be reinstated on the trial calendar.

WEAVER, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.

___

July 3, 1959. Petition for rehearing denied.