[No. 4175–1.   Division One..   December 19, 1977.]

DANIEL R. SHAFFER, *Appellant*, v. VICTORIA STATION, INC., *Respondent*.

*Jones, Grey & Bayley* and *Charles F. Vulliet,* for appellant.

*Merrick, Hofstedt & Lindsey* and *Andrew C. Gauen,* for respondent.

SWANSON, J.—Plaintiff appeals a judgment of dismissal, alleging error in the conclusion that no cause of action lies in strict liability or breach of implied warranty of fitness for personal injury suffered by a restaurant patron after a wine glass shattered in his hand. We affirm.

On March 27, 1974, Daniel R. Shaffer, appellant herein, ordered a class of rosé wine at the "Victoria Station Restaurant," operated by Victoria Station, Inc., respondent. In the course of taking his first or second sip, the wine glass broke in Mr. Shaffer's hand, resulting in alleged permanent injury.

Suit was commenced in November 1974 on theories of negligence and strict liability. Named as defendants were the operator of the restaurant and the then unidentified manufacturer of the glass (who was never served).

While presenting a pretrial motion in limine, plaintiff introduced a breach of implied warranty of fitness argument. The court ruled, however, that the case sounded in negligence alone. Nevertheless, plaintiff decided that pursuing a negligence theory of liability would be futile and struck the claim from his complaint. He then requested the court to rule on his alternative allegations and the facts as stated and permit the case to proceed on strict liability and implied warranties theories. Defendant then moved for dismissal of plaintiff's complaint as amended. The court granted the dismissal, reiterating its conclusion that the facts as presented could not sustain a verdict grounded on breach of implied warranty for fitness or strict tort liability.[1] This appeal followed.

■ On the basis of the facts submitted, three questions confront the court: (1) May a cause of action lie on a theory of strict liability? (2) Was a claim of breach of implied warranty adequately pleaded? (3) If so, may a cause of action lie based on a breach of implied warranty of fitness? In considering these questions the factual allegations of plaintiff must be accepted as true and the trial court will be affirmed only if it is clear from the pleadings that plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Halvorson v. Birchfield Boiler, Inc.*, 76 Wn.2d 759, 458 P.2d 897 (1969); *Hofto v. Blumer*, 74 Wn.2d 321, 444 P.2d 657 (1968).

THE QUESTION OF STRICT LIABILITY

Our Supreme Court first recognized the concept of strict liability in *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969), adopting the rationale of Restatement (Second) of Torts § 402A (1965). That section provides in pertinent part:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

---

[1]This is, in effect, a dismissal on the pleadings and the facts related by plaintiff for failure to state a claim upon which relief can be granted. CR 12(b)(6). *See also* RCW 4.32.190.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

The court recently expanded applicability of the concept from the manufacturer of a defective product to anyone within the product's chain of distribution. *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975).

Appellant argues that strict liability applies here, emphasizing two points. First, respondent Victoria Station sold to Mr. Shaffer and was "engaged in the business of selling" a glass of wine, rather than merely the wine itself. Appellant urges that although a purchase of the wine glass was never intended or implied, the container of the wine sold was so integral to the transaction as to fall within the ambit of section 402A. Secondly, the shattering of the glass without prior warning of a defect fails to meet the reasonable expectations of an ordinary consumer and thus renders the product unreasonably dangerous as defined by our Supreme Court in *Seattle–First Nat'l Bank v. Tabert, supra* at 154.

Respondent answers that appellant is suggesting a reallocation of risk whenever an unexpected injury occurs, thus creating a theory of "enterprise liability." Respondent characterizes such to be an improvident expansion of the strict liability concept, and points to cases where services incidental to sales were not held to be within the scope of strict liability. *See, e.g., Magrine v. Spector,* 100 N.J. Super. 223, 241 A.2d 637 (1968) (involving a dentist's use of a defective hypodermic needle which broke in the plaintiff's gum); *Speyer, Inc. v. Humble Oil & Refining Co.,* 403 F.2d 766 (3d Cir. 1968), *cert. denied,* 394 U.S. 1015 (1969)

(wherein a lessee of a malfunctioning gasoline pump failed in a strict liability argument against the lessor).

The basic purposes of the strict liability concept revolve around protecting the innocent consumer and reallocating risks with those responsible in a chain of distribution. *See Seattle–First Nat'l Bank v. Tabert, supra* at 148, citing Note, 45 Wash. L. Rev. 431 (1970). In the instant case appellant admits it would be impossible to demonstrate the glass was originally defective as manufactured. For this reason appellant chose not to serve the manufacturer in this suit. For the same reason, however, liability could not be expected to flow from the retailer (should we characterize the transaction in question as a sale under section 402A) back to the manufacturer, even had he been responsible. Thus, the idea of holding a retailer liable to effect a conduit to a more inaccessible manufacturer would not be served in this fact pattern.

Thus, disposition of the case must turn on the degree of protection to be accorded the consumer in the instance of an unexpected accident. Treating the facts presented in the manner most favorable to the appellant, it seems clear that the wine glass could be deemed unreasonably dangerous. The major question, then, becomes whether appellant offers a tenable argument when asserting the wine glass was a product sold, and thus under the aegis of section 402A. We do not believe so.

Were the wine glass in question held to be a mere facet of the sale of the "glass of wine" and thus a "product" for the purposes of section 402A, the theory of strict liability would be greatly and unnecessarily expanded. The reasonably clear standard of engagement "in the business of selling . . . a product" would be abandoned in deference to a less predictable question—whether the injury–producing aspect of the sale was necessary to the sale. If a wine glass renders a restaurateur strictly liable because he could not sell wine without it, what of other tablewear, the waiters and the bus boys, the furnishings to effect an attractive atmosphere, or the building housing the establishment?

The argument could be made that numerous aspects of a restaurant's operation, or that of any other retailer, are integral to each sale. To ignore the fact that this allegedly defective glass was never sold would create great uncertainty as to the limits of strict liability.

Appellant argues that such may be necessary as he has no other theory of recovery except implied warranty, which he admits is analogous to strict liability. But there appears no reason why a negligence theory based on a res ipsa loquitur argument would not have proven suitable for the type of unexpected and unexplainable accident as occurred here. Thus, the suggested expansion of the strict liability theory would be unnecessary as well as unsound.

THE QUESTION OF PLEADING OF THE IMPLIED
WARRANTY THEORY OF RECOVERY

■ Respondent argues that appellant failed to allege a breach of warranty in his complaint and, therefore, such a theory of recovery should not be reviewed. This stand, however, contradicts the liberal posture taken in this state toward motions and pleadings.

Civil Rule 15(b) reads as follows:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; . . .

The broad scope of this rule demonstrates an intent to discourage arguments such as respondent's based on formalities of pleadings. *Amende v. Pierce County*, 70 Wn.2d 391, 423 P.2d 634 (1967). Since the trial judge spoke directly to the issue of breach of implied warranties in the judgment of dismissal, review by this court is appropriate regardless of an absence of properly amended pleadings. *Smith v. Pacific Pools, Inc.*, 12 Wn. App. 578, 582, 530 P.2d 658 (1975).

## THE QUESTION OF BREACH OF IMPLIED WARRANTY

■ Appellant argues that RCW 62A.2–314 creates a cause of action in the instant case for breach of implied warranty. Those sections of the statute argued to be applicable are as follows:

62A.2–314 Implied warranty: Merchantability; usage of trade. (1) Unless excluded or modified (RCW 62A.2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

. . .

(c) are fit for the ordinary purposes for which such goods are used; and

. . .

(e) are adequately contained, packaged, and labeled as the agreement may require; . . .

Appellant argues that the language "serving for value of food or drink" encompasses the serving of a glass of wine, and, therefore, that transaction constitutes a sale and creates implied warranties. While creative, this argument appears illogical. The statute elsewhere defines "sale" as a transferring of title. RCW 62A.2–106(1). To interpret this section as does appellant requires the wine glass to be considered part of the sale, yet, it is clear, title does not pass as to the glass. Therefore, we interpret this language to relate solely to the food or drink sold and not an accompanying container.

For the reasons enumerated we affirm the decision of the lower court.

CALLOW, J., concurs.

ANDERSEN, J. (dissenting)—Of concern to me is that at the time this jury case was called for trial, the attorney for the injured plaintiff walked into the judge's chambers with a case—and then walked out without a case, a decision

having been made therein based on colloquy between the court and counsel.

The rules as to when a trial court may prevent a case from going to the jury are basic:

> While an action may ordinarily be dismissed upon motion at any stage of the proceeding when it is ascertained that the court has no jurisdiction, or at any time before verdict when the complaint fails to state facts sufficient to constitute a cause of action, and a motion for directed verdict on the opening statement of counsel may ordinarily be entertained at the conclusion of that statement, motions to take the case from the jury upon the ground of the failure or the insufficiency of the proof ordinarily cannot be made until the conclusion of the plaintiff's testimony in chief.

(Footnotes omitted.) 75 Am. Jur. 2d *Trial* § 428 (1974). *See Mayflower Air–Conditioners, Inc. v. West Coast Heating Supply, Inc.*, 54 Wn.2d 211, 339 P.2d 89 (1959).

The dismissal of the plaintiff's case in chambers violated these principles and for that reason I dissent from the majority opinion which affirms the trial court. The case should not have been terminated for failure or insufficiency of the plaintiff's proof at the very outset of the trial in this fashion.

The trial court unquestionably had jurisdiction of the parties and of the action.

The plaintiff's complaint adequately pleaded a case, therefore, the defendant was not entitled to a judgment on the pleadings. CR 12(c).

While it is true that plaintiff's counsel did in chambers offer to stipulate to certain facts and issues, that offer was not accepted by opposing counsel so the facts may not be regarded as having been stipulated. CR 2A.

Similarly, the case is not an agreed case, since the parties did not submit an agreed statement of all of the ultimate facts on which the controversy depends, leaving to the trial court and this court only the function of deciding questions of law. RCW 4.52.010.

No trial was held; hence, there is no testimony or evidence before us. Neither were the depositions that were taken in this case ever made a part of the record nor affidavits presented, since no motion for summary judgment was brought. CR 56.

With no testimony of any kind in the record, I, at least, am unable to determine from what is before us whether the jury might not have been able to find facts, or inferences fairly deducible therefrom, that under one of the legal theories pleaded would have entitled the plaintiff's case to go to the jury.

For these reasons, the record in this case does not provide a satisfactory factual basis on which to decide the substantive questions of law presented by the parties. As a building cannot be constructed on quicksand, I do not believe that a judicial decision involving factual issues should be based on the colloquy between the court and plaintiff's counsel in this case which took place in chambers.

Even if the statement of plaintiff's counsel were to be considered as equivalent to an opening statement made in open court, the trial court's power to dismiss on that basis is subject to strict limitations and conditions. In this case, such a motion could have been granted only where the statement of plaintiff's counsel affirmatively, or by admission, established the existence of facts which would have precluded the plaintiff from recovering, *Hallum v. Mullins,* 16 Wn. App. 511, 516, 557 P.2d 864 (1976), and that was not the situation here.

Notwithstanding that the parties have invited us to rule on the substantive legal issues, I would decline to do so for the reasons noted. As a court, we have a duty to notice sua sponte rule violations of the kind here involved and to reverse if need be in order to enforce compliance with the rules of court. *Bitzan v. Parisi,* 88 Wn.2d 116, 126, 558 P.2d 775 (1977).

I would reverse and remand the case. It should be tried on the complaint as filed,[2] or otherwise decided in accordance with the Superior Court Civil Rules.

Petition for rehearing denied February 28, 1978.

Review granted by Supreme Court July 21, 1978.

---

[2]During the in–chambers argument and colloquy referred to, plaintiff's counsel withdrew the negligence aspects of his complaint from the trial court's consideration. The judgment of dismissal provided that such withdrawal was pursuant to CR 41 and without prejudice. A reversal herein should therefore return the entire case to the status it occupied before the conference with the trial judge. *See* 5 Am. Jur. 2d *Appeal and Error* § 955 (1962).