[No. 14374–3–I.   Division One.   January 15, 1986.]

EDWARD H. REICHELT, ET AL, *Appellants,* v. JOHNS–
MANVILLE CORPORATION, ET AL, *Respondents.*

RINGOLD, J., concurs by separate opinion.

*William Rutzick,* for appellants.

*James A. Murphy, Charles W. Mertel, Barry Mesher, Paul C. Gibbs, John R. Allison, Paul T. Dalton, Palmer Robinson, Arthur Hart, Laurie Kohli, Robert Israel, Charles V. Moren, John J. Soltys, David L. Martin, Charles E. Peery, John Bergmann, David R. Antal, Michael Mines, Megan Graves, Thomas W. Huber, Steven S. Bell, R. Scott Fallon, Helen Harvey, W. Matt Murray,* and *Michael R. Green,* for respondents.

WILLIAMS, J.—Edward Reichelt brought this products liability action against 28 asbestos manufacturers and distributors, alleging that he developed asbestosis and pulmonary disease as a result of exposure to defendants' products.[1] Mrs. Reichelt sought damages for loss of consortium. The trial court granted defendants' motion for sum-

---

[1]Reichelt contends that he also alleged causes of action for negligence and misrepresentation. The pertinent allegations of the complaint are as follows:

6. Defendants manufactured and/or put asbestos and asbestos products into the stream of commerce. The asbestos and asbestos products were not reasonably safe.

7. The asbestos and asbestos products were uniquely and specifically designed, advertised and marketed for maritime use and for installation on ships as maritime asbestos products.

8. Defendants put asbestos and asbestos products into the stream of commerce without providing adequate warnings to those using or exposed to asbestos or asbestos products concerning the hazards of asbestos and asbestos products.

9. Defendants engaged in concerted or conspiratorial activities or omissions which prevented adequate warnings concerning the hazards of asbestos and asbestos products from being provided to those using or exposed to asbestos and asbestos products.

10. Defendants' conduct was outrageous, reckless, intentional, intolerable, wanton, wilful, malicious, and with indifference to the rights and safety of plaintiffs; such conduct being beyond all reasonable bounds of decency.

11. These actions or omissions of defendants proximately caused severe personal injury and other damages to plaintiffs.

Clerk's Papers, at 147–48. Even under Washington's liberal rules of pleading, Reichelt's complaint did not contain direct allegations sufficient to give defendants notice of the nature of these claims. *See MacLean v. Bellingham,* 41 Wn. App. 700, 703–04, 705 P.2d 1232 (1985).

mary judgment of dismissal on the ground that the Reichelts' claims were barred by the 3–year statute of limitations, RCW 4.16.080(2). The Reichelts appeal.

Between 1953 and 1974, Edward Reichelt worked in Puget Sound area shipyards installing asbestos insulation. In 1957, he began taking some precautions regarding his work habits after a co–worker was diagnosed as having asbestosis due to exposure to asbestos products at work. In the mid–1960's, Reichelt developed a belief that the asbestos material used in pipe coverings was a "dangerous product." Clerk's Papers, at 108. On September 28, 1971, after being examined as part of a medical surveillance program sponsored by his union, Reichelt received a letter from Dr. Irving Tabershaw which stated:

> It is our impression that you have mild asbestosis.
>
> In order to protect your workmen's compensation rights under the laws of the State of Washington, you must file a claim within one year of notification of this knowledge. Filing the form in no way affects your ability to work or your continuation at work. It is simply a notification to the State of Washington of the potential situation.
>
> . . .
>
> Please bear in mind that this examination was aimed at the detection of asbestosis as early as possible. At this stage the disease is not necessarily disabling or progressing.

Clerk's Papers, at 118. Reichelt did file a worker's compensation claim with the State, but, as he stated in his deposition, he thought this diagnosis of asbestosis merely meant "[t]hat they had found some asbestos fibers in my lungs." Clerk's Papers, at 93.

In 1974, Reichelt quit his job installing asbestos insulation because, as he stated in his deposition:

> with this medical surveillance program we were voluntarily engaged in, I became aware there was a potential hazard for myself as well as other people, and that was one of the reasons I wanted to get out of the trade. There were others. By then, we were aware of the fact that asbestos doesn't diminish after you've been exposed to it.

Clerk's Papers, at 63. Reichelt also stated in his deposition that in 1974 and 1976 he was informed, as part of his training for his new job as an Occupational Safety and Health Act investigator, that "asbestos was considered a dangerous material in certain concentrations" and asbestos was a "hazardous material." Clerk's Papers, at 114.

In 1976, the State Department of Labor and Industries closed the claim Reichelt had filed in 1971. Reichelt responded by letter dated November 1, 1976, which stated:

> [my claim] is for the condition of Asbestosis caused by continual exposure to installation materials containing this substance for the twenty years while I was employed as an asbestos worker. This disease is permanent in nature and the condition does not improve even though a person is no longer exposed to the hazard.
>
> . . .
>
> This is a permanent respiratory impairment detectable by X–ray and other clinical symptoms that has this past year caused me additional breathing difficulty, particularly when climbing stairs, lifting heavy objects and has severely limited my ability to enjoy certain recreational activities.

Clerk's Papers, at 121–22. Reichelt stated in his deposition that this letter overstated his case and he was not suffering any of these symptoms at that time, although his fingers were clubbing, a condition he knew was caused by asbestosis.

In his affidavit in opposition to the manufacturers' motion for summary judgment, Reichelt stated that as of January 1, 1979, he did not know that asbestos products were "unreasonably dangerous," that before October 20, 1977, he should not reasonably have discovered that asbestos products were "unreasonably dangerous," that before October 20, 1977, he did not believe that his condition was functionally limiting—that he had been damaged by his exposure to asbestos products. Clerk's Papers, at 52. William Bailey, an attorney experienced in asbestos litigation, stated in his affidavit that prior to October 20, 1977, he was not aware that asbestos products were "unreasonably dan-

gerous." Clerk's Papers, at 49. In a supplemental answer to defendants' interrogatories, Reichelt listed 14 asbestos manufacturers and distributors whose products he was exposed to during his work installing asbestos insulation. The Reichelts brought this action on October 20, 1980.

The first issue is whether Edward Reichelt's cause of action had accrued by October 20, 1977. A products liability cause of action accrues when the plaintiff discovers or reasonably ought to have discovered that (1) he suffers physical harm from a product which has a defective condition making it unreasonably dangerous, (2) the defendant seller is engaged in the business of selling such a product, and (3) the product is expected to and does reach plaintiff without substantial change in the condition in which it is sold. *Sahlie v. Johns–Manville Sales Corp.,* 99 Wn.2d 550, 552, 663 P.2d 473 (1983).[2] Because this is an appeal from an order granting summary judgment, the material submitted to the trial court and all reasonable inferences flowing therefrom must be considered in the light most favorable to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

The physical harm Reichelt alleges that he suffers from is asbestosis. Reichelt knew that he had asbestosis on September 28, 1971, when he received Dr. Tabershaw's letter, and, at least by 1976, he knew that his disease was caused by exposure to asbestos products in his trade. A product is "unreasonably dangerous," and therefore is defective, when it is unsafe to an extent beyond that which would be reasonably contemplated by an ordinary consumer. *Estate of Ryder v. Kelly–Springfield Tire Co.,* 91 Wn.2d 111, 117, 587 P.2d 160, 16 A.L.R.4th 129 (1978). An

---

[2]Washington's "discovery rule" is different from that of other jurisdictions. *See Pauley v. Combustion Eng'g, Inc.,* 528 F. Supp. 759, 764 (S.D. W. Va. 1981). Thus, cases from other jurisdictions are of limited value. *See generally* Annot., *When Statute of Limitations Begins To Run as to Cause of Action for Development of Latent Industrial or Occupational Disease,* 1 A.L.R.4th 117, 127–34 (1980 & Supp. 1985); 3A L. Frumer & M. Friedman, *Products Liability* § 39A.03, at 12–17 through 12–39 (1985).

ordinary consumer who had been informed by presumably knowledgeable persons that a product is "dangerous" and "hazardous," who knew that it caused clubbing of his fingers and who claimed that it had caused him difficulty in breathing would consider that product unsafe to an extent beyond his reasonable expectations.

Reichelt knew the identities of 14 of the 28 defendants by 1974, when he quit his job installing asbestos insulation. By the exercise of reasonable diligence, he could have ascertained the identities of the other defendant manufacturers and distributors whose products he was exposed to during his work installing asbestos insulation by October 20, 1977.

In addition, by the exercise of reasonable diligence, by October 20, 1977, Reichelt could have ascertained that the asbestos products he was exposed to were expected to and did reach him without substantial change in the condition in which they were sold.

The trial court correctly concluded that, by October 20, 1977, Reichelt had discovered or reasonably ought to have discovered all the essential elements of his cause of action. Once Reichelt knew that he had asbestosis and that this disease was caused by exposure to asbestos products at work, he should have prosecuted his claim. Because he did not, the statute of limitations on his cause of action expired.

■ The second issue is whether Mrs. Reichelt's claim for loss of consortium is barred by the statute of limitations. Although loss of consortium is a separate cause of action which need not be joined with the injured spouse's action, *Lund v. Caple,* 100 Wn.2d 739, 743–44, 675 P.2d 226 (1984), the statute of limitations begins to run on the same date for both claims. *Cathcart v. Keene Indus. Insulation,* 324 Pa. Super. 123, 471 A.2d 493, 502 (1984); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 125, at 937 (5th ed. 1984). The trial court correctly dismissed Mrs. Reichelt's claim for loss of consortium.

Affirmed.

WEBSTER, J., concurs.

RINGOLD, J. (concurring)—I respectfully concur to clarify my view of the result. It appears that the majority opinion resolves conflicting issues of fact, contrary to the general rule governing summary judgments.

The majority takes from *Sahlie v. Johns–Manville Sales Corp.*, 99 Wn.2d 550, 552, 663 P.2d 473 (1983) the correct legal standard to be applied to determine whether a products liability cause of action accrues. The determination itself, however, should normally be left to the trier of fact. *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 514, 598 P.2d 1358 (1979). The question before this court is, "Do plaintiffs present an issue of material fact upon which reasonable minds could disagree?" *Hartley v. State,* 103 Wn.2d 768, 772, 698 P.2d 77 (1985).

The Reichelts filed their complaint for products liability on October 20, 1980. A 3–year statute of limitations applies to this action. RCW 4.16.080(2). Prior to October 20, 1977, Reichelt knew that he had asbestosis caused by asbestos products in his trade, and he knew most of the sources of the products and could reasonably have discovered the others. In 1974, one of the reasons he left his trade was the potential hazard of asbestos. Yet, Reichelt alleges in his affidavit that as of January 1, 1979, he did not know asbestos was "unreasonably" dangerous.[3] He admits, however, that prior to October 20, 1977, he knew the product was dangerous, hazardous, and caused clubbing of his fingers. In 1976, he also submitted a claim to the State Department of Labor and Industries, alleging he suffered difficulty breath-

---

[3]The Reichelts also submitted an affidavit from an attorney practicing asbestos litigation, stating that prior to October 20, 1977, the attorney had not filed any third party lawsuits against asbestos manufacturers because at that time he was unaware asbestos was unreasonably dangerous. This evidence, while perhaps pertinent to the general state of knowledge concerning asbestos in the bar, has no relevance to the state of knowledge of the particular plaintiffs in this case.

ing related to his asbestosis.

In *Hartley,* at 775, the court stated the rule applicable here: "Thus, when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law." Reasonable minds could reach but one conclusion from these facts: that prior to October 20, 1977, Reichelt knew that asbestos was unreasonably dangerous. There is no material fact in dispute about which reasonable minds could differ; therefore, summary judgment was proper.

Review granted by Supreme Court May 6, 1986.