[No. 52528–5. En Banc. March 5, 1987.]

EDWARD H. REICHELT, ET AL, *Petitioners*, v. JOHNS–MANVILLE CORPORATION, ET AL, *Respondents*.

*William Rutzick* and *Schroeter, Goldmark & Bender,* for petitioners.

*Garvey, Schubert, Adams & Barer,* by *Donald P. Swisher,* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* by *Philip A. Talmadge,* for respondents.

*Randall W. Ebberson* and *Michael C. Walter* on behalf of Washington Association of Defense Counsel, amici curiae for respondents.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this appeal is whether the trial court erred by dismissing plaintiffs' negligence and loss of consortium claims. On October 20, 1980, Edward and Lois Reichelt sued 28 asbestos manufacturers and distributors for injuries sustained as a result of Edward Reichelt's exposure to asbestos. From 1953 to 1974, Reichelt was an asbestos worker for insulation contractors and distributors in the Puget Sound area. He charged that because of this exposure to asbestos he developed asbestosis and pulmonary disease, which were diagnosed in October 1980.

Reichelt first heard of asbestosis in 1957, when a friend and co-worker was diagnosed as having the disease. When Reichelt asked what asbestosis was, his friend replied, "Well, it's the stuff we work with. It's in my lungs." Reichelt was concerned and began taking precautions at work. By the mid-1960's Reichelt realized that asbestos was a dangerous product.

On September 28, 1971, after being examined as part of a medical surveillance program sponsored by his union, Reichelt received a letter informing him that he had "mild asbestosis". Reichelt realized that this condition was caused by his exposure to asbestos products. The letter advised Reichelt to file a workman's compensation claim within a year to protect his rights. Reichelt also was informed that "[a]t this stage, the disease is not necessarily disabling or progressing". Reichelt thereupon filed a workman's compensation claim with the State.

After learning he had asbestosis, Reichelt began taking "evasive measures" such as using a respirator to avoid dust. In 1974, he took the "ultimate special care" of quitting his job. As explained in a deposition:

> I became aware there was a potential hazard for myself as well as other people, and that was one of the reasons I wanted to get out of the trade. . . . By then, we were

aware of the fact that asbestos doesn't diminish after you've been exposed to it.[1]

Reichelt was hired by the United States Department of Labor as an Occupational Safety and Health Act (OSHA) investigator in 1974. During training seminars in 1974 and 1976 he learned that "asbestos was considered a dangerous material in certain concentrations" and that asbestos "was a hazardous material". During those seminars, Reichelt was trained in OSHA asbestos standards.

In 1976, the State Department of Labor and Industries closed Reichelt's claim. He protested that action by a November 1, 1976 letter which stated in part:

[My claim] is for the condition of Asbestosis caused by continual exposure to insulation materials containing this substance for the twenty years while I was employed as an asbestos worker. This disease is permanent in nature and the condition does not improve even though a person is no longer exposed to the hazard.

. . .

In July of 1974, I left the asbestos workers trade to avoid further exposure to asbestos dust.

. . .

This is a permanent respiratory impairment detectable by X–ray and other clinical symptoms that has this past year caused me additional breathing difficulty, particularly when climbing stairs, lifting heavy objects and has severely limited my ability to enjoy certain recreational activities.

. . .

. . . I not only insist my claim remain open but would like your office to consider this letter as a formal claim for compensatory damages for Asbestosis.[2]

In a deposition, Reichelt explained that an industrial hygienist helped write the letter and overstated Reichelt's case to keep the claim open. Reichelt said that he did not suffer from the conditions described in the letter when he signed it. One condition he did acknowledge at that time,

---

[1]Clerk's Papers, at 63.

[2]Clerk's Papers, at 121–22.

however, was a clubbing of his fingers which he knew was caused by asbestosis.

After the Reichelts filed suit in 1980, defendants jointly moved for summary judgment on the ground that the claims based on products liability, negligence, misrepresentation and loss of consortium were barred by this state's 3–year statute of limitations, RCW 4.16.080(2). Reichelt filed an affidavit in opposition to the motion stating that as of January 1, 1979, he did not know that the defendants might have committed wrongful acts, been negligent, or breached legal duties which proximately caused his asbestos–related condition, and that he did not then know that he might have a claim for damages against the defendants. Lois Reichelt stated in a declaration that "I did not believe on October 20, 1977 that my husband's condition was functionally limiting." The Reichelts also filed an affidavit from an attorney familiar with the development of asbestos–related claims; he stated that attorneys did not become aware of facts showing that asbestos manufacturers were negligent until after October 20, 1977.

The trial court granted the defendants' motion for summary judgment, finding that Reichelt's products liability claim accrued no later than November of 1976 and was therefore barred by the statute of limitations. The court also ruled that any cause of action based on negligence, misrepresentation or loss of consortium would likewise be time barred.

The Court of Appeals affirmed the trial court's dismissal of the products liability and loss of consortium claims, and dismissed the negligence and misrepresentation claims on the ground that they were inadequately pleaded.[3]

The Reichelts only sought review of the Court of Appeals' treatment of their negligence and loss of consortium claims. We granted review thereof pursuant to RAP 13.4(b).

Three issues are presented in this court.

---

[3]*Reichelt v. Johns–Manville Corp.*, 42 Wn. App. 620, 621 n.1, 712 P.2d 881 (1986).

## ISSUES

ISSUE ONE. Did the Court of Appeals err in dismissing the negligence claim on the ground that it was inadequately pleaded?

ISSUE TWO. Was the negligence claim properly dismissed, in any event, because barred by the statute of limitations?

ISSUE THREE. Did the Court of Appeals err in ruling, as a matter of law, that Lois Reichelt's loss of consortium claim accrued when Edward Reichelt's products liability claim accrued?

## DECISION

ISSUE ONE.

CONCLUSION. Since the negligence claim was argued by both parties and ruled on by the trial court, it should have been treated as if raised in the pleadings;[4] hence the negligence claim should not have been dismissed on the ground that it was inadequately pleaded.

The starting point for consideration of this issue is CR 15(b):

**AMENDED AND SUPPLEMENTAL PLEADINGS**

. . .

**(b) Amendments To Conform to the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

CR 15(b) is designed to avoid "the tyranny of formalism" that characterized former practice.[5] Where evidence raising issues beyond the scope of the pleadings is admitted without objection, the pleadings will be deemed amended to

---

[4]*See* CR 15(b).

[5]*Harding v. Will*, 81 Wn.2d 132, 136, 500 P.2d 91 (1972).

conform to the proof.[6]

The Court of Appeals ruled that even under Washington's liberal rules of pleading, the Reichelts' complaint did not contain direct allegations sufficient to give the defendants notice of the nature of the negligence claim.[7] The Reichelts do not now contend that their complaint gave adequate notice of Edward Reichelt's negligence claim. Rather, they argue that because the issue was argued and ruled upon at the trial court level, it should have been deemed part of the pleadings. We agree.

The record contains a number of references to Reichelt's negligence claim. The affidavits filed in opposition to the motion for summary judgment expressly referred to the defendants' alleged negligence. In a reply to the plaintiffs' memorandum opposing summary judgment, one defendant addressed the negligence claim. Interrogatories filed by the defendants asked the plaintiffs to "[s]tate with specificity your basis for each and every allegation of negligence against each defendant . . ." The plaintiffs responded with a detailed answer. Both sides addressed the negligence claim in oral argument, and the trial court ruled that its decision regarding the products liability claim "would also prohibit any cause of action based on negligence." The written order entered by the trial court referred several times to plaintiffs' causes of action.

A somewhat similar situation was presented in *Shaffer v. Victoria Station, Inc.,* 18 Wn. App. 816, 572 P.2d 737 (1977), *rev'd on other grounds,* 91 Wn.2d 295, 588 P.2d 233 (1978). In *Shaffer,* respondent argued that appellant's failure to allege a breach of warranty in his complaint precluded review of that theory of recovery. The Court of Appeals disagreed, declaring that respondent's stand "contradicts the liberal posture taken in this state toward

---

[6]*Jensen v. Ledgett,* 15 Wn. App. 552, 555, 550 P.2d 1175 (1976); *see also Harding,* at 136.

[7]*Reichelt,* at 621 n.1.

motions and pleadings."[8] The court stated further that

> The broad scope of [CR 15(b)] demonstrates an intent to discourage arguments such as respondent's based on formalities of pleadings. Since the trial judge spoke directly to the issue of breach of implied warranties in the judgment of dismissal, review by this court is appropriate regardless of an absence of properly amended pleadings.

(Citations omitted.) *Shaffer,* at 821.[9]

In holding that Reichelt's negligence claim was insufficiently pleaded, the Court of Appeals cited *MacLean v. Bellingham,* 41 Wn. App. 700, 705 P.2d 1232 (1985). The court in *MacLean* affirmed the trial court's refusal to order an injunction because MacLean's request for such relief was not in the complaint's prayer for relief. MacLean had mentioned injunctive relief in a memorandum in support of summary judgment but provided no supporting argument, nor did he mention such relief at the hearing on the motion for summary judgment. The *MacLean* court found the pleadings insufficient to give his opponent and the trial court notice of the type of injunctive relief requested.[10]

The facts here more closely resemble the facts in *Shaffer* than those in *MacLean.* The parties in this case argued the negligence issue before and during the hearing on the summary judgment motion. The trial court ruled on the issue. Both Reichelt's opponents and the trial court thus had notice not only of the fact of Reichelt's negligence claim, but also of the details of same.

The Court of Appeals thus erred when it held that the inadequacies of the plaintiff's complaint precluded it from considering Edward Reichelt's negligence claim.

Issue Two.

Conclusion. Since Edward Reichelt knew or reasonably

---

[8]*Shaffer v. Victoria Station, Inc.,* 18 Wn. App. 816, 821, 572 P.2d 737 (1977), *rev'd on other grounds,* 91 Wn.2d 295, 588 P.2d 233 (1978).

[9]*See also Amende v. Pierce Cy.,* 70 Wn.2d 391, 400, 423 P.2d 634 (1967).

[10]*MacLean v. Bellingham,* 41 Wn. App. 700, 703-04, 705 P.2d 1232 (1985).

should have known all of the facts necessary to establish the essential elements of his negligence claim prior to October 20, 1977, his cause of action filed on October 20, 1980, is barred by the 3–year statute of limitations.

■ The determination of when Reichelt's claim accrued is governed by the discovery rule. As we explained in *White v. Johns–Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687 (1985),

> In an ordinary personal injury action, the general rule is that a cause of action "accrues" at the time the act or omission occurs. In certain torts, however, injured parties do not, or cannot, know they have been injured; in these cases, a cause of action accrues at the time the plaintiff knew or should have known all of the essential elements of the cause of action. The rule of law postponing the accrual of the cause of action is known as the "discovery rule".

(Citations omitted.) Parenthetically, we note that the discovery rule set forth in the Washington tort reform act is inapplicable to this case because Reichelt's claim arose before July 26, 1981.[11]

Under the rule just quoted, a cause of action in a negligence case accrues when a plaintiff discovers or reasonably should have discovered the essential elements of negligence, *i.e.*, duty, breach, causation and damages.[12] The discovery rule does not require knowledge of the existence of a legal cause of action. As explained in *Sahlie v. Johns–Manville Sales Corp.*, 99 Wn.2d 550, 554, 663 P.2d 473 (1983),

> While in most cases knowledge, actual or imputed, of the essential elements of the action will probably amount to knowledge of the existence of the cause of action, this is not necessarily so. A plaintiff may well be aware of the facts comprising the essential elements of the action without being aware that he has a legal cause of action.

Negligence issues normally involve factual disputes to be

---

[11]*See Rose v. A.C. & S., Inc.*, 796 F.2d 294, 297 n.1 (9th Cir. 1986); RCW 7.72.060.

[12]*Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 511, 598 P.2d 1358 (1979).

resolved by the trier of fact.[13] If no genuine issue of material fact is presented when the motion for summary judgment is heard, the issue may be summarily resolved.[14]

The trial court decided that a summary resolution was justified in this instance and granted the defendants' motion for summary judgment on Reichelt's negligence claim. The court held that even if Reichelt did not know about the defendants' breach of duty before 1977, he should have:

> Here we have a plaintiff who for nearly a decade was aware of the disease and of the cause. At some point the responsibility has to be placed on that person to make further inquiry as to the particular rights of action that could be filed.[15]

Reichelt acknowledges that he was aware of two elements of negligence—damages and causation—before 1977. He knew he had asbestosis in 1971 and he knew that his condition was caused by exposure to asbestos. Reichelt claims, however, that he did not know before 1979 that the asbestos manufacturers had breached a duty toward him. Reichelt spoke to an attorney about asbestos in 1979 and talked to his present counsel in 1980. It was not until that 1980 meeting, he claims,

> that I learned about what those companies knew or were on notice to have known back in 1953 about asbestos hazards, and learned about the information that they had about the risks of asbestos. I do not believe that I reasonably should have learned about this information prior to 1980, . . . because the information was largely within the defendants' possession, and has largely been revealed in legal proceedings only after October 20, 1977.[16]

---

[13]*See Hartley v. State,* 103 Wn.2d 768, 775, 698 P.2d 77 (1985); *LaPlante v. State,* 85 Wn.2d 154, 159, 531 P.2d 299 (1975).

[14]CR 56; *LaPlante,* at 159; *Lundgren v. Kieren,* 64 Wn.2d 672, 677–78, 393 P.2d 625 (1964).

[15]Verbatim Report of Proceedings, at 38.

[16]Clerk's Papers, at 53.

While not dispositive of the negligence issue, the Court of Appeals' dismissal of Reichelt's products liability claim is of relevance here. A products liability cause of action accrues when the plaintiff discovers or reasonably ought to have discovered that (1) he or she suffers physical harm from a product which has a defective condition making it unreasonably dangerous; (2) the defendant seller is engaged in the business of selling such a product; and (3) the product is expected to and does reach plaintiff without substantial change in the condition in which it is sold.[17]

The Court of Appeals found that Reichelt knew of his physical harm in 1971.[18] The court also concluded that Reichelt knew that the asbestos products he handled were unreasonably dangerous:

An ordinary consumer who had been informed by presumably knowledgeable persons that a product is "dangerous" and "hazardous," who knew that it caused clubbing of his fingers and who claimed that it had caused him difficulty in breathing would consider that product unsafe to an extent beyond his reasonable expectations.

*Reichelt v. Johns–Manville Corp.*, 42 Wn. App. 620, 624–25, 712 P.2d 881 (1986).

That court further decided that Reichelt knew the identities of 14 of the 28 defendants by 1974, at the time he quit his job installing asbestos insulation. It also concluded that by the exercise of reasonable diligence, he could have determined the identities of the other manufacturers by October 20, 1977, and also could have ascertained whether their products reached him without substantial change.[19]

Reichelt does not here contest the Court of Appeals decision dismissing his products liability claim. We are thus

---

[17]*Reichelt v. Johns–Manville Corp.*, 42 Wn. App. 620, 624, 712 P.2d 881 (1986); *Sahlie v. Johns–Manville Sales Corp.*, 99 Wn.2d 550, 552, 663 P.2d 473 (1983).

[18]*Reichelt,* at 624.

[19]*Reichelt,* at 625.

presented with a plaintiff who knew that the product that caused him harm was unreasonably dangerous. Moreover, he knew the identities of many of the potential defendants. With this information he should also have known that he could charge those defendants with wrongdoing, even if he was unaware of the technical aspects of negligence and precisely what the companies knew of asbestos hazards in 1953.

Under negligence law, a defendant's duty is to exercise ordinary care.[20] A manufacturer's duty of ordinary care is a duty to warn of hazards involved in the use of a product which are or should be known to the manufacturer.[21]

Reichelt knew by October 20, 1977, that asbestos products were unreasonably dangerous. He reached this conclusion on his own and from his OSHA training, during which he was informed that asbestos was dangerous and hazardous. He knew that asbestosis was an irreversible condition, and he knew the health problems caused by the disease. It is difficult to perceive that a person with such detailed and extensive knowledge could characterize asbestos manufacturers and sellers as acting with ordinary care. It is also difficult to perceive that while Mr. Reichelt realized the dangers of asbestos before 1977, he did not know until 1980 that its manufacturers had also realized those dangers.

Mr. Reichelt would have us adopt a rule that would in effect toll the statute of limitations until a party walks into a lawyer's office and is specifically advised that he or she has a legal cause of action; that is not the law. A party must exercise reasonable diligence in pursuing a legal claim. If such diligence is not exercised in a timely manner, the cause of action will be barred by the statute of limitations. Mr. Reichelt knew or should have known the essential ele-

---

[20]*Gordon v. Deer Park Sch. Dist. 414,* 71 Wn.2d 119, 122, 426 P.2d 824 (1967).

[21]*Novak v. Piggly Wiggly Puget Sound Co.,* 22 Wn. App. 407, 412, 591 P.2d 791 (1979); Restatement (Second) of Torts § 388 (1965).

ments of his negligence claim before October 20, 1977; thus, his negligence claim filed on October 20, 1980, is barred by the 3–year statute of limitations. We affirm the dismissal of his negligence claim on that basis.

ISSUE THREE.

CONCLUSION. Loss of consortium is a separate claim that does not necessarily accrue when the impaired spouse's claim accrues. On the record presented, we hold that the Court of Appeals erred in dismissing the deprived spouse's loss of consortium claim. The deprived spouse in this case is Mrs. Reichelt.

Loss of consortium is typically thought of as a "loss of society, affection, assistance and conjugal fellowship, and . . . loss or impairment of sexual relations" in the marital relationship.[22] In Washington, either a husband or wife may recover for loss of consortium when that person's spouse is injured.[23] The Restatement identifies the spouse who suffers bodily injury as the "impaired spouse" and the spouse who suffers a loss of services and society as the "deprived spouse".[24] We accept this nomenclature.

The degree to which a loss of consortium claim depends on the timeliness of the impaired spouse's claim has not been previously decided in Washington. Some courts hold that recovery for loss of consortium will be defeated or diminished by defenses that would bar or diminish the impaired spouse's claim.[25] Thus, according to that view, if the impaired spouse's claim is barred by a statute of limi-

---

[22]*Ueland v. Pengo Hydra–Pull Corp.*, 103 Wn.2d 131, 132 n.1, 691 P.2d 190 (1984), citing Black's Law Dictionary 280 (5th ed. 1979).

[23]*Lundgren v. Whitney's Inc.*, 94 Wn.2d 91, 96, 614 P.2d 1272 (1980); *Christie v. Maxwell*, 40 Wn. App. 40, 42, 696 P.2d 1256, *review denied*, 104 Wn.2d 1002 (1985).

[24]Restatement (Second) of Torts § 693, comment *a*, at 495 (1977).

[25]*See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 125, at 937 (5th ed. 1984).

tations, the deprived spouse's claim is likewise barred.[26]

The courts which reach that result generally do so because of their view that the loss of consortium claim depends upon, or is a derivative of, the impaired spouse's personal injury claim.[27] In the case before us, the trial court and Court of Appeals appear to have rested their dismissals of the loss of consortium claim on this rationale. The trial court stated that the consortium claim had to be tied to the underlying cause of action. The Court of Appeals cited *Cathcart v. Keene Indus. Insulation,* 324 Pa. Super. 123, 471 A.2d 493 (1984) in holding that Lois Reichelt's claim accrued when her husband's claim accrued.[28]

One commentator describes a loss of consortium claim as derivative, but derivative in a special sense.[29] A derivative action is generally one that owes its existence to a preceding cause of action and is often, as in a shareholder's derivative suit, no more than a separate right to enforce the preceding claim.[30] While a loss of consortium action is dependent on the occurrence of an injury to another, the claimant suffers an original injury that is the subject of the action.[31] Thus, the injury rather than the claim is derivative.[32] For this reason, as this commentator posits, the rights of the deprived spouse should not be restricted by or

---

[26]W. Keeton, § 125.

[27]*See Cathcart v. Keene Indus. Insulation,* 324 Pa. Super. 123, 471 A.2d 493 (1984); *Hunter v. School Dist.,* 97 Wis. 2d 435, 293 N.W.2d 515 (1980); W. Keeton, § 125, at 938.

[28]*Reichelt,* at 625; see footnote 27.

[29]Note, *Loss of Consortium: A Derivative Injury Giving Rise to a Separate Cause of Action,* 50 Fordham L. Rev. 1344, 1352 (1982).

[30]Note, 50 Fordham L. Rev. at 1351.

[31]Note, 50 Fordham L. Rev. at 1352.

[32]Note, 50 Fordham L. Rev. at 1353.

contingent on the rights of the impaired spouse.[33]

Some courts have applied this reasoning in holding that a loss of consortium claim does not, as a matter of law, accrue when the underlying claim accrues. In 1947, the North Dakota Supreme Court cited a Minnesota court's statement that "[t]he injury negligently inflicted upon the wife gave *two separate and independent causes of action.* One in favor of the wife for damages suffered by her personally, and one in favor of her husband . . . for the loss of her services."[34] The North Dakota court held that a husband could not recover for his separate claim of right until he had actually suffered a loss. "A husband has no right of action for the loss of the services, society and companionship of his wife and incidental expense for her treatment and care, until the loss of services, society and companionship actually has occurred."[35] While the wife's injuries occurred on April 1, 1943, in that case her husband suffered no loss of consortium until March 7, 1945. Thus, the husband's loss of consortium claim filed on November 10, 1945 was not time barred by North Dakota's 2–year statute of limitations.

More recently, a federal district court noted that the basis of a claim for loss of consortium in Ohio is the direct hurt suffered because of the loss of society and services.[36] While the husband's injury in that case occurred when his doctor left a surgical drain in his body during a 1964 appendectomy, the wife's "direct hurt" did not occur until after the surgical device was discovered and removed from her husband in 1977. The statute of limitations on the wife's loss of consortium claim thus did not begin to run in

---

[33]Note, 50 Fordham L. Rev. at 1353.

[34]*Milde v. Leigh,* 75 N.D. 418, 426, 28 N.W.2d 530, 173 A.L.R. 738 (1947), citing *Fowlie v. First Minneapolis Trust Co.,* 184 Minn. 82, 83, 237 N.W. 846, 78 A.L.R. 589 (1931) (italics in *Milde*).

[35]*Milde,* at 430.

[36]*Baughman v. Bolinger,* 485 F. Supp. 1000, 1003 (S.D. Ohio 1980).

1964:

> Up until [1977] plaintiff enjoyed the consortium of her husband; after that time she alleges this consortium was lost to her. To hold that the statute of limitations governing her right to sue for loss of consortium was running during years in which she fully enjoyed that consortium would be to exalt fiction and avoid undeniable reality.

*Baughman v. Bolinger,* 485 F. Supp. 1000, 1003 (S.D. Ohio 1980).

We recently held that a loss of consortium action is a separate cause of action that need not be joined with the injured spouse's claim.[37] Even more recently the Court of Appeals cited that holding and stated that "[w]e conclude the Supreme Court has characterized the [loss of consortium] action as separate and independent rather than derivative."[38] That is correct. In so concluding, the Court of Appeals also recognized the special nature of loss of consortium claims:

> Under the law in this state [the wife] is an individual with separate legal rights which arise independent of her identity as a member of the . . . marital community. Yet there would be no injury to her consortium rights without the accompanying physical injury to her spouse, and the existence of the marital relationship.

*Christie v. Maxwell,* 40 Wn. App. 40, 47–48, 696 P.2d 1256, *review denied,* 104 Wn.2d 1002 (1985).

█ Since Lois Reichelt's claim for loss of consortium is a separate cause of action in Washington, it logically follows that the statute of limitations governing her claim should begin to run when *she* experienced *her* injury, not when her husband knew of his injury. Based on the foregoing, we conclude that a deprived spouse's loss of consortium claim is not necessarily determined by the timeliness of the impaired spouse's claim.

In order to decide whether Mrs. Reichelt's claim is time

---

[37]*Lund v. Caple,* 100 Wn.2d 739, 743–44, 675 P.2d 226 (1984).

[38]*Christie,* at 44.

barred, therefore, it must first be ascertained when *her* cause of action as the deprived spouse accrued. The record before us is virtually bare as to when Mrs. Reichelt began to lose her husband's consortium. The defendants made no factual showing regarding her loss. They relied instead on the legal argument that the deprived spouse's loss of consortium claim accrues, as a matter of law, at the time the impaired spouse's claim arises. One of the few factual references in the record to Mrs. Reichelt's claim is her statement that "I did not believe on October 20, 1977, that my husband's condition was functionally limiting, and I did not understand at that time that he had been materially damaged by asbestos." Nowhere does the record indicate when, as to her, the husband's condition became functionally limiting with regard to his society and services.

In a similar situation, the Third Circuit in *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 574 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038 (1977) concluded that a district court had erred in granting summary judgment. The Circuit Court held that the record did not support a finding that the appellant husband discovered his loss of consortium more than 2 years before he and his wife filed suit. Summary judgment thus could be sustained only if, assuming the wife's personal injury claim was barred by the 2–year statute of limitations, the same bar applied as a matter of law to the husband's loss of consortium claim. The Circuit Court declined to so hold:

> Although it is dependent upon an actionable wrong having been committed against his wife, a husband's [loss of consortium] claim is independent from and not a derivative of her personal injury claim. . . . Since his action is independent, the courts of New Jersey would, we are convinced, require a separate determination of the date of his discovery of a claim against [the defendant]. Thus, the summary judgment barring the [loss of consortium] claim cannot stand.

*Goodman,* at 574.

Nor can we uphold the summary judgment dismissing Lois Reichelt's loss of consortium claim in this case. The

trial court did not point to any factual showing to establish when she actually began to lose her husband's consortium, nor can we. Without such a factual showing, it cannot be ascertained whether Mrs. Reichelt's claim is barred by our 3–year statute of limitations. This case must, therefore, be remanded to the trial court for further proceedings in order to resolve the wife's loss of consortium claim.

Affirmed in part; reversed in part.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, CALLOW, GOODLOE, and DURHAM, JJ., concur.